**Mae G. STIFFLER, Plaintiff–Appellant,**

v.

**LUTHERAN HOSPITAL, d/b/a Hoopeston Community Memorial Hospital, Defendant–Appellee.**

**No. 91–2088.**

United States Court of Appeals, Seventh Circuit.

Argued Feb. 28, 1992.

Decided May 13, 1992.

Michael D. Clary (argued), Danville, Ill., for plaintiff-appellant.

Karen L. Kendall (argued), Heyl, Royster, Voelker & Allen, Peoria, Ill., James C. Kearns, Heyl, Royster, Voelker & Allen, Urbana, Ill., for defendant-appellee.

Before POSNER, FLAUM, and KANNE, Circuit Judges.

KANNE, Circuit Judge.

This case raises subtle issues about the scope of Illinois' medical malpractice statute of repose. On November 23, 1981, Indiana resident Mae G. Stiffler underwent surgery for a hiatal hernia at the Lutheran Hospital of Hoopeston, Illinois. The operation was a complete success—or so she thought until she began experiencing abdominal pains more than four years later. Exploratory surgery on August 4, 1987 revealed that the source of Stiffler's pain was a prosthetic device which had been medically implanted in her chest cavity during the hernia operation; apparently, the prosthesis had broken away from its placement and became tangled in her intestines, thereby causing her extreme discomfort.

Following the prosthesis' removal, Stiffler brought this products liability suit against Lutheran on May 10, 1989. She alleged that the prosthesis was defective, so Lutheran—as its distributor—was strictly liable for all her ensuing injuries. Lutheran immediately moved to dismiss her action as barred by the Illinois medical malpractice statute of repose, a law prohibiting suits against hospitals if "brought more than 4 years after the date on which occurred the act or omission" giving rise to the injury. See ILL.REV.STAT., ch. 110, § 13-212 (1989). This of course presented a formidable obstacle to the success of her claim, since her injuries stemmed from an operation which had taken place more than seven years before she first filed her complaint. Dismissal was a foregone conclusion; the district court had only to formally rule on Lutheran's motion.

Stiffler didn't give the district court a chance to act. Instead, she dismissed Lu-

theran on her own accord and simultaneously filed an amended complaint against the prosthesis' manufacturer. With a new defendant—one who did not enjoy the protection of the statute of repose—her only concern was complying with the Illinois statute of limitations for products liability actions. *See* ILL.REV.STAT., ch. 110, §§ 2–621–22 (1989).[1] As it would turn out, however, that was a task easier said then done. She didn't file her amended complaint against the manufacturer until August 17, 1989—a week after the applicable two-year limitations period had expired—and process was not actually served on the new defendant until nearly eight months later. Naturally, the manufacturer took note of these deficiencies and moved for summary judgment.

Seeing no issue of material fact as to whether Stiffler's amended complaint was barred by the statute of limitations, the district court entered summary judgment in the manufacturer's favor. But Stiffler ventured one last avenue of redress. She motioned to have her original complaint against Lutheran reinstated, arguing as follows: since her suit against the Lutheran sounded in products liability, the viability of her claim was governed coextensively by *both* the statute of repose *and* the Illinois statute of limitations for products liability actions. That would mean that she could still sue Lutheran—notwithstanding the fact that her claim was otherwise barred by the statute of repose—because Lutheran was served with her original complaint in May 1989, a full three months before the products liability limitations period had run.

The district court disagreed with her reasoning and denied her motion. In reaching this conclusion, the court first noted that the statute of repose served as the sole benchmark for evaluating the viability of her claim against Lutheran:

[The statute of repose] states that "no action," whether sounding in "tort, or breach of contract, or otherwise," may be maintained against a hospital if the action was brought four or more years after the hospital allegedly caused injury. That language readily seems to encompass a strict liability action against a hospital. Thus if the court determines that [the statute of repose] applies to this case, then [the Hospital] is immune from suit … (citations omitted).

The court then went on to hold, as a matter of law, that the statute of repose barred Stiffler's claim. From this ruling she now appeals.

■ Stiffler now contends that the district court committed reversible error by reading the Illinois statute of repose so broadly as to cover products liability actions. This boils down to a question of statutory construction, and the Supreme Court has directed us to review a district court's construction of state law *de novo. Salve Regina College v. Russell,* —— U.S. ——, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991). "In exercising our obligation to provide meaningful appellate review in diversity cases, we must strive to parse state law and, if necessary, forecast its path of evolution." *Ludwig v. C & A Wallcoverings, Inc.,* 960 F.2d 40, 42 (7th Cir.1991) (*quoting Belline v. K-Mart Corp.,* 940 F.2d 184, 186 (7th Cir.1991)). Viewing Stiffler's claim in this light, we conclude that the district court properly determined that the statute of repose—and only the statute of repose—was the appropriate clock for measuring the viability of her suit.

■ The words of a statute are often the best indicator of legislative intent, *Board of Governors of the Fed. Reserve Sys. v. Dimension Financial Corp.,* 474 U.S. 361, 372, 106 S.Ct. 681, 688–89, 88 L.Ed.2d 691 (1986), and the instant case is no exception. In order to remedy a perceived crisis in skyrocketing medical insurance costs, the Illinois General Assembly intentionally drafted the statute of repose with sweeping language:

through use of reasonable diligence should have known, of the existence of the personal injury, death or property damage.…"

---

1. Section 622(d) of the statute of limitations for products liability actions provides that "the plaintiff may bring an action within 2 years after the date on which the claimant knew, or

*[N]o action for damages ... against any ... hospital duly licensed under the laws of this State, whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought ... more than 4 years after the date on which occurred the act or omission or occurrence alleged in such action to have been the cause of injury.*

ILL.REV.STAT. ch. 110, § 13–212 (1990) (emphasis added). So where's the ambiguity with respect to Stiffler's products liability claim? She brought suit to recover damages; her suit sounds in tort (negligence or strict liability), although she could have just as easily alleged a contract theory (express warranty or implied warranty of merchantability); and nothing in the statute even remotely suggests that products liability actions are a class of suit exempt from § 13–212's coverage. That means her claim plainly falls within the scope of § 13–212—provided, of course, that the injury arose "out of patient care." We would be hard pressed to imagine a more cut and dry application.

■ Stiffler correctly points out that the Illinois General Assembly addressed the product liability insurance crisis by enacting distinct statutes of limitations for products liability actions. But contrary to what she asserts, the fact that § 13–212 contains no clearly stated intent to affect these statutes does not mean that products liability claims are immune from its application. It is a well-established principle of statutory construction that silence is not an invitation to embark on a path of judicial lawmaking. *Morrison–Knudsen Construction Co. v. Director, Office of Workers' Compensation Programs, U.S. Dept. of Labor,* 461 U.S. 624, 643, 103 S.Ct. 2045, 2055, 76 L.Ed.2d 194 (1983). Doing so would only be reasonable under very special circumstances, such as where a well-established agency or judicial statutory construction has been brought to the attention of the legislature, and the legislature has not sought to alter that interpretation even though it has amended the statute in other respects. *Id.; United States v. Rutherford,* 442 U.S. 544, 554 n. 10, 99

S.Ct. 2470, 2476 n. 10, 61 L.Ed.2d 68 (1979). Neither exception is applicable here.

Recent Illinois caselaw reinforces our conclusion that § 13–212 covers products liability actions. In *Hayes v. Mercy Hospital and Medical Center,* 136 Ill.2d 450, 145 Ill.Dec. 894, 557 N.E.2d 873 (1990), the Illinois Supreme Court was called upon to interpret § 13–212's phrase "or otherwise." After considering the policies underlying the statute of repose, the Court opined:

We believe that the term demonstrates the General Assembly's desire at the time it originally enacted the statute to limit a physician's exposure to liability for damages for injury or death arising out of patient care *under all theories of liability,* whether then existing or not.

*Id.* 136 Ill.Dec. at 898, 557 N.E.2d at 877 (emphasis added). Had the Illinois Supreme Court meant to exempt products liability actions from the scope of the statute of repose, it certainly could have chosen more restrictive language than "all theories of liability." Indeed, if anything, we should take this language as a signal to construe the phrase "or otherwise" as liberally as the statute permits.

■ Stiffler has a back-up argument: her injury did not in fact arise "out of patient care," and therefore § 13–212 cannot act as a bar to her suit against the Hospital. To support this proposition, she argues that her injury resulted not from the Hospital's medical care, but rather from the Hospital's negligent choice and distribution of a defective prosthetic device. That negligent act, she maintains, was unrelated to her medical treatment. We disagree.

The fatal flaw in this argument is that the distinction between medical care and the distribution of medical materials is not as clearly delineated as Stiffler would have us believe. Quite the contrary, medical materials are so inextricably linked with every step of today's treatment processes that their use almost *per se* arises "out of patient care." Take, for instance, a prosthetic device like the one implanted in Stiffler. It has an intrinsic value in and of itself. It is a real good with a real cost.

But the Hospital is not in the business of "selling" or "supplying" this device to anyone that walks through its doors, and with good reason—no one except hiatal hernia patients would need them. Rather, what it sells are the skill and services necessary to alleviate illnesses through the use of a wide range medical materials, as complex as the elaborate CAT scan or as simple as an ordinary hospital bed. *See, e.g., Gardner v. McDonald,* [1975–77 Transfer Binder] Prod. Liab. Rep. (CCH) ¶ 8053, at 16,450 (Tenn.Ct.App.1977) (implantation of prosthesis was not a sale). That is precisely what Stiffler received.

"[A]rising out of patient care" was intended to be construed broadly. *See Miller v. Tobin,* 186 Ill.App.3d 175, 134 Ill.Dec. 173, 177, 542 N.E.2d 173, 177 (1989). However, like the district court, we recognize that there may indeed be certain activities undertaken by a hospital which are not part of a patient's medical treatment. For example, a hospital-run gift shop which sells non-prescription medicine to the general public might be held strictly liable if the product ultimately proved harmful for consumer use. But that is not this case. The Hospital never placed Stiffler's prosthesis in the stream of commerce; it never promoted it for purchase by the public; and it was in no better position than Stiffler to examine the product and discover the defect. We therefore hold that Stiffler's products liability claim—at least as it is as alleged—arose of "out of patient care" within the meaning of § 13–212. Accordingly, the district court properly concluded that her claim was barred.

The other issues raised by Stiffler are without merit and warrant no additional discussion. The district court's denial of Stiffler's motion to reinstate her original complaint is therefore AFFIRMED.