Docket No. 102534.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

DIANE ORLAK, Appellant, v. LOYOLA UNIVERSITY HEALTH
SYSTEM *et al*., Appellees.

*Opinion filed December 28, 2007.*

JUSTICE GARMAN delivered the judgment of the court, with
opinion.

Justices Freeman, Fitzgerald, and Karmeier concurred in the
judgment and opinion.

Justice Kilbride specially concurred, with opinion.

Justice Burke dissented, with opinion.

Chief Justice Thomas took no part in the decision.

## OPINION

In July 2002, plaintiff, Diane Orlak, sued defendant Loyola
University Health System (Loyola) in the circuit court of Cook
County, alleging that Loyola was liable to her for an alleged failure to
notify her in a timely manner that she may have contracted hepatitis C
(HCV) from a blood transfusion that she received in 1989 during
hospitalization for injuries sustained in an accident. The circuit court
granted Loyola's motion to dismiss, finding that plaintiff's action was
barred by the statute of repose contained in section 13–212(a) of the
Code of Civil Procedure (Code) (735 ILCS 5/13–212(a) (West
2002)). The appellate court affirmed (No. 1–04–0401 (unpublished

order under Supreme Court Rule 23)) and we granted plaintiff's petition for leave to appeal (210 Ill. 2d R. 315).

BACKGROUND

Plaintiff was hospitalized at Foster G. McGaw Hospital in Maywood, Illinois, in April and May 1989, for burns suffered during a work-related accident. During the course of her hospitalization, plaintiff was given a blood transfusion. Because plaintiff was unconscious at the time, her mother signed a consent form for the transfusion. That form stated in part, "In making such request and in giving such consent, I hereby acknowledge that I have been informed that there is no known definitive test for the determination of the existence or non-existence of viral hepatitis in blood and that I fully understand that the transfusion or administration of blood or blood components to me may result in viral hepatitis or other untoward reactions." Sometime in 1990, Loyola advised plaintiff to be tested for the presence of the human immunodeficiency virus (HIV). Plaintiff underwent testing and tested negative for the presence of the virus. In August 2000, Loyola notified plaintiff by letter that she should be tested for HCV because her blood donor had recently tested positive for the virus. After being tested, plaintiff learned that the test was positive for HCV.

In her third amended complaint, plaintiff alleged that following Loyola's advice to her in 1990 to be tested for HIV, she reasonably believed that, after testing negative for that virus, the blood she had received was safe and free from deadly disease. She also took issue with Loyola's statement in its August 2000 letter that at the time she received her blood transfusion, no reliable tests for HCV were available. She alleged that in 1996, the Food and Drug Administration (FDA) issued a memorandum to hospitals advising them to notify patients who received blood transfusions prior to 1992 to be tested for the presence of HCV. Plaintiff also alleged that in 1997 the National Institutes of Health (NIH) published a "Consensus Development Conference Statement," which found that HCV progresses at a slow rate with no symptoms in the majority of patients during the first 20 years after infection. The NIH also found that HCV patients who consume alcoholic beverages are at greater risk of rapidly developing cirrhosis of the liver and end-stage liver disease. The NIH

-2-

recommended that individuals who had received blood transfusions prior to 1990 should be tested for HCV. According to plaintiff, the NIH report was posted on the Internet in April 1997 and was published in the Journal of Hepatology in September 1997.

Plaintiff's complaint contained counts alleging constructive fraud, medical negligence, medical battery, and ordinary negligence. In count I, for constructive fraud, plaintiff alleged that Loyola's failure to inform her of the need to be tested for HCV at the time it advised her to be tested for HIV lulled her into a false sense of security that the blood she had received was free of disease. She alleged that her reliance in that regard was justifiable and reasonable. In count IV, for ordinary negligence, plaintiff alleged that in 1996 and 1997 Loyola knew or should have known of the need for plaintiff to be tested for HCV and that, beginning in 1996, or at the latest in March 1997, Loyola owed plaintiff a duty of reasonable care to notify her that she had potentially contracted HCV through her blood transfusion and that she needed to be tested. Plaintiff also alleged that for every day thereafter that the duty existed, Loyola continued to breach its duty of care by failing to notify plaintiff of the potential for infection and the need to be tested.

Loyola filed a motion to dismiss all counts (735 ILCS 5/2–619(a)(5) (West 2002)) on the ground that plaintiff's action was time-barred. Loyola argued that plaintiff's cause of action arose out of patient care stemming from her 1989 hospitalization and blood transfusion. Thus, the medical malpractice statute of repose (735 ILCS 5/13–212(a) (West 2002)) was applicable. Loyola argued that this applied as well to plaintiff's claims for constructive fraud and ordinary negligence. The circuit court agreed and dismissed plaintiff's complaint with prejudice.

The appellate court affirmed. With respect to plaintiff's ordinary negligence claim, the court rejected her argument that because she was no longer a patient and she challenged only the failure to timely give notice of the need for testing, her cause of action did not arise out of patient care. The appellate court also rejected plaintiff's constructive fraud and equitable estoppel claims. No. 1–04–0401 (unpublished order under Supreme Court Rule 23).

ANALYSIS

I

A motion to dismiss under section 2–619 of the Code admits the legal sufficiency of the complaint, but asserts some affirmative matter that defeats the claim. *King v. First Capital Financial Services Corp.*, 215 Ill. 2d 1, 12 (2005). In ruling on the motion, the circuit court must interpret all pleadings and supporting documents in the light most favorable to the nonmoving party. *Borowiec v. Gateway 2000, Inc.*, 209 Ill. 2d 376, 383 (2004). Our standard of review in this appeal is *de novo. DeSmet v. County of Rock Island*, 219 Ill. 2d 497, 504 (2006).

II

Plaintiff argues that the circuit and appellate courts erred in holding that the four-year medical malpractice statute of repose applies to bar her claim for ordinary negligence. That statute provides in part:

> "Except as provided in Section 13–215 of this Act, no action for damages for injury or death against any physician, dentist, registered nurse or hospital duly licensed under the laws of this State, whether based upon tort, or breach of contract, or otherwise, *arising out of patient care* shall be brought more than 2 years after the date on which the claimant knew, or through the use of reasonable diligence should have known, or received notice in writing of the existence of the injury or death for which damages are sought in the action, whichever of such date occurs first, but in no event shall such action be brought more than 4 years after the date on which occurred the act or omission or occurrence alleged in such action to have been the cause of such injury or death." (Emphasis added.) 735 ILCS 5/13–212(a) (West 2002).

This statute contains both a two-year period of limitations and a four-year period of repose. The two-year limitations period is triggered by the plaintiff's discovery of the injury; in contrast, the four-year repose period is triggered by the occurrence of the act or omission that caused the injury. The only exception to the four-year statute of repose is the fraudulent-concealment exception contained

-4-

in section 13–215 of the Code (735 ILCS 5/13–215 (West 2002)). The statute of repose sometimes bars actions even before the plaintiff has discovered the injury. While this may result in harsh consequences, the legislature enacted the statute of repose for the specific purpose of curtailing the "long tail" exposure to medical malpractice claims brought about by the advent of the discovery rule. *Anderson v. Wagner*, 79 Ill. 2d 295, 312 (1979).

Only claims "arising out of patient care" are affected by the medical malpractice statute of repose. Our analysis of this issue is governed by familiar principles of statutory construction. The cardinal rule of statutory construction is to ascertain and give effect to the intent of the legislature. *Murray v. Chicago Youth Center*, 224 Ill. 2d 213, 235 (2007). That intent is best gleaned from the words of the statute itself, and where the statutory language is clear and unambiguous, it must be given effect. *General Motors Corp. v. State of Illinois Motor Vehicle Review Board*, 224 Ill. 2d 1, 13 (2007). A court should interpret a statute, where possible, according to the plain and ordinary meaning of the language used. *Paris v. Feder*, 179 Ill. 2d 173, 177 (1997). In determining the plain meaning of a statute's terms, we consider the statute in its entirety, keeping in mind the subject it addresses, and the apparent intent of the legislature in enacting the statute. *People v. Perry*, 224 Ill. 2d 312, 323 (2007). Issues of statutory construction are reviewed *de novo*. *Paris*, 179 Ill. 2d at 177-78.

Plaintiff argues that the question in this case is whether the injury she has alleged arose from patient care or from an administrative decision by Loyola not to send notice of the need to be tested for HCV. She argues that, under the appellate court's construction of the statute, once a person becomes a patient of a medical provider, virtually any subsequent interaction between the patient and the provider is governed by the statute of repose. According to plaintiff, such a construction would impermissibly expand the scope of the statute beyond its plain language. She points out that her "patient care" ended in 1989 and that she has not alleged any wrongdoing by Loyola during the time she was hospitalized. Plaintiff believes that by using the phrase "arising out of patient care," the legislature intended the statute of repose to govern claims based on events that involve actual patient care.

Loyola, on the other hand, argues that plaintiff's interpretation of the phrase "arising out of patient care" is much too narrow. That plaintiff's hospitalization ended long ago is not determinative; it is the nature of the conduct, not the timing thereof, that determines whether a claim arises out of patient care. Loyola argues that accepting plaintiff's interpretation would eviscerate the statute of repose because plaintiffs could avoid the statute by casting their claims as based on a failure to provide follow-up care at a later date. According to Loyola, plaintiff's contention that Loyola breached only an administrative duty by its failure to notify her in 1996 and 1997 would impose a duty with no temporal bounds on Loyola and other health-care providers.

Plaintiff cites several Illinois and foreign cases in support of her argument. *Cammon v. West Suburban Hospital Medical Center*, 301 Ill. App. 3d 939 (1998), dealt, in relevant part, with a claim against the defendant hospital for spoliation of evidence. One ground upon which the circuit court dismissed the claim was that the action was filed outside the statute of repose. The appellate court disagreed, noting that a negligence action for spoliation of evidence is predicated on a breach of the duty to preserve evidence. It does not involve patient care. Thus, the claim was not governed by the medical malpractice statute of repose. *Cammon*, 301 Ill. App. 3d at 950. Contrary to plaintiff's argument, *Cammon* is not applicable to this case. The duty there had nothing whatever to do with patient care. It dealt with a duty imposed on a party to the litigation to preserve evidence relevant to the case. *Cammon* stands only for the unremarkable proposition that not all negligence actions against physicians or hospitals involve patient care.

Plaintiff also cites a Tennessee case, *Estate of Doe v. Vanderbilt University, Inc.*, 958 S.W.2d 117 (Tenn. App. 1997). There, the plaintiff's decedent received a blood transfusion in 1984 in connection with surgery. The donor blood was not tested for the presence of HIV. The decedent was not informed that she had received the transfusion, nor was she advised that she was at risk of having been infected with HIV. She later married and became pregnant. It was only when she gave birth to a daughter who had become infected with the virus *in utero* that the decedent learned of her condition. The infant died of acquired immune deficiency syndrome (AIDS) shortly after her birth and the decedent died of AIDS subsequent to the

initiation of a lawsuit against Vanderbilt based on Vanderbilt's failure to notify the decedent in 1987 and 1988 that the blood she received in the transfusion had not been tested for HIV. Vanderbilt admitted that it did not search its records to provide notice to transfusion recipients. The circuit court found that the case was governed by the Tennessee medical malpractice statute and that absent expert testimony that Vanderbilt had deviated from the recognized standard of care for hospitals in the area, no genuine issue of material fact existed and that summary judgment was appropriate. The court of appeals phrased the issue as whether Vanderbilt's failure to notify decedent and other patients was a medical decision subject to the medical malpractice statute. The court determined that it was not. Extensive evidence had been taken in the circuit court in connection with Vanderbilt's summary judgment motion. That evidence convinced the court of appeals that the decision not to notify was not a medical one. *Doe*, 958 S.W.2d at 121.

*Doe* is inapplicable to the instant case. We are not concerned with whether Loyola's failure to notify in 1996 and 1997 involved the exercise of medical judgment or some other type of judgment. The only inquiry is whether plaintiff's cause of action arose from patient care. This is a completely different standard from the one involved in *Doe*.

Plaintiff also cites a Georgia case, *Canas v. Al-Jabi*, 282 Ga. App. 764, 639 S.E.2d 494 (2006). The plaintiff in that case had received blood transfusions in 1985 while a pediatric patient at a hospital. The blood was not tested for the presence of HIV. The plaintiff developed AIDS, which was not diagnosed until he was a teenager. The hospital considered implementing a notification program, but decided not to do so based on concerns about the expense, logistical complexity, and legal implications of such a program. The relevant inquiry as framed by the Georgia court of appeals was whether the case involved a "medical question," which the court defined as requiring highly specialized expert knowledge with respect to which a layperson can have no knowledge at all. The court contrasted acts involving such medical questions with administrative, clerical, or routine acts demanding no special expertise. Those acts, the court stated, fall into the realm of ordinary negligence. *Canas*, 282 Ga. App. at 787-88, 639 S.E.2d at 517. The court noted that the record showed the decision

not to notify the plaintiff and others like him of the risk of HIV infection was not based on medical expertise but, rather, was based on administrative concerns. Thus, the court concluded that the plaintiff's claim was based on ordinary negligence and was not subject to the medical malpractice statutes of limitation and repose. *Canas*, 282 Ga. App. at 790, 639 S.E.2d at 518.

As with *Doe*, the *Canas* case does not support plaintiff's argument. The statute of repose in *Canas* stated that an "action for medical malpractice" may not be brought more than five years after the date on which the negligent act or omission occurred. *Canas*, 282 Ga. App. at 770, 639 S.E.2d at 505-06. In contrast, the Illinois statute of repose encompasses any action for damages arising out of patient care, regardless of whether it arises from a tort, a contract, or from some other source. Indeed, this court has held that the reach of the statute is not limited to actions at law. In *Hayes v. Mercy Hospital & Medical Center*, 136 Ill. 2d 450, 458 (1990), we held that the legislature intended the phrase "or otherwise" in the statute of repose to be all-inclusive and we concluded that the phrase includes actions for contribution against a physician for injuries arising out of patient care.

Plaintiff also argues the fact that the requirements of section 2–622 of the Code (735 ILCS 5/2–622 (West 2002)) do not apply to her case provides further support for her contention that her claims against Loyola do not arise out of patient care. Section 2–622 requires a plaintiff who seeks damages due to "injuries or death by reason of medical, hospital, or other healing art malpractice" to obtain an attorney's affidavit and health professional's report stating that there is a reasonable and meritorious cause for filing a lawsuit. However, section 2–622 focuses only on actions involving some form of medical malpractice. As we have stated, the statute of repose at issue here encompasses a much broader range of claims. Nowhere does the statute of repose mention the words "malpractice" or "healing arts malpractice." Thus, the inapplicability of section 2–622 to this case does not impact the issue of whether plaintiff's cause of action arises from patient care.

Courts that have addressed the issue have given the phrase "arising out of patient care" a broad meaning. In *Miller v. Tobin*, 186 Ill. App. 3d 175 (1989), the plaintiff and his wife were receiving

marriage counseling from the defendant, a psychiatrist. The plaintiff alleged that the defendant had disclosed confidential information to the plaintiff's wife, in violation of the Mental Health and Developmental Disabilities Confidentiality Act. The trial court dismissed the action on the ground that it had not been filed within the two-year statute of limitations in section 13–212 of the Code. The appellate court affirmed, rejecting the plaintiff's argument that because his complaint did not allege malpractice, section 13–212 did not apply. The court noted that a statute of limitations is to be construed in light of its objectives and that the phrase "arising out of" is broad and generally means "originating from," "growing out of," or "flowing from." The court observed that the plaintiff's alleged injury occurred during the course of the defendant's treatment of the plaintiff's wife; thus, the alleged injury arose from patient care. *Miller*, 186 Ill. App. 3d at 177-78.

In *Walsh v. Barry-Harlem Corp.*, 272 Ill. App. 3d 418 (1995), the plaintiff filed a complaint under the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act), alleging that the defendants falsely represented to the plaintiff that he needed eye surgery and that they altered notes from the plaintiff's eye testing to justify the surgery. The trial court dismissed the complaint as barred by the two-year statute of limitations contained in section 13–212 of the Code. The appellate court affirmed, concluding that the limitations period of section 13–212 governed, rather than the three-year limitations period applicable to the Consumer Fraud Act. The court rejected the plaintiff's argument that section 13–212 was inapplicable because he did not allege any deviation from a standard of care, but only fraud related to the commercial aspects of the defendants' eye-care business. The court concluded that the defendants' alleged decision to perform unnecessary surgery on the plaintiff's eye did indeed implicate a standard of care. As such, the plaintiff's alleged injury arose out of patient care. His allegations of misconduct were "inextricable" from the defendants' diagnosis and treatment of the plaintiff's eye. *Walsh*, 272 Ill. App. 3d at 425.

In *Stiffler v. Lutheran Hospital*, 965 F.2d 137 (7th Cir. 1992), the court, construing Illinois law, held that a products liability action against a hospital for implantation of a defective prosthetic device was governed by the statute of repose contained in section 13–212. The

court further held that the plaintiff's claim arose from patient care, rejecting the plaintiff's argument that her injury arose, not from medical care, but from the hospital's negligent choice and distribution of a defective prosthetic device. The court contrasted the plaintiff's situation with a hypothetical example in which a hospital's activities would not arise from patient care. For instance, the court stated, a hospital-run gift shop might be strictly liable if nonprescription medicine it sold to the general public was proved to be harmful to consumers. In contrast, the defendant hospital in the plaintiff's case did not place the plaintiff's prosthesis in the stream of commerce, it did not promote its purchase to the general public, and it was in no better position than the plaintiff to examine the prosthesis and discover the defect. *Stiffler*, 965 F.2d at 141.

It is clear that the legislature intended the statute of repose to operate in a very broad manner and it has been interpreted in that manner by courts addressing the issue. The question is not whether the plaintiff has alleged medical negligence or ordinary negligence. Rather, the sole issue is whether the plaintiff's claim arose from patient care. The word "arise" is defined in Black's Law Dictionary as "[t]o originate; to stem (from)," or "to result (from)." Black's Law Dictionary 115 (8th ed. 2004). "Arise" is also defined elsewhere as "to originate from a source." Merriam-Webster's Collegiate Dictionary 66 (11th ed. 2006).

We have very recently discussed the degree of causation required by the phrase "arising out of patient care" in section 13–212. In *Brucker v. Mercola*, No. 102440 (December 28, 2007), we construed this phrase "simply as requiring a causal connection between the patient's medical care and the injury. While the phrase does not need to be construed so broadly as to encompass 'but for' causation, it clearly covers any injuries that have their origin in, or are incidental to, a patient's medical care and treatment." *Brucker*, slip op. at 17. The broad nature of the phrase "arising out of patient care" is aptly illustrated in *Brucker*. There, the plaintiff, who was then pregnant, went to the defendant doctor in 1995 for an allergy consultation. The defendant prescribed a nutritional supplement called L-glutamine, one of many that he sold in his office. He provided this service to his patients and made only incidental sales to the general public. The L-glutamine prescribed for the plaintiff was ordered in bulk form and the

-10-

defendant's receptionist, who had no medical training, was responsible for transferring the bulk supplement into individual bottles. The receptionist accidentally filled the bottle given to the plaintiff with selenium, rather than L-glutamine. The plaintiff became very ill when she ingested the selenium.

The plaintiff and her husband initially filed a medical malpractice complaint in 1997, but the complaint was voluntarily dismissed and not refiled until 2002. A year later, the plaintiffs amended their complaint to add an additional count that alleged their son, Robert, who was born in January 1996, had been poisoned *in utero* when his mother ingested the selenium. The defendant filed a motion to dismiss the action on the ground that the eight-year repose period in section 13–212(b) of the Code had expired.

One of the plaintiff's arguments was that the injuries allegedly caused to Robert did not arise out of patient care. This court disagreed, noting that the phrase "arising out of patient care" has been broadly defined and refers to a causal connection. *Brucker*, slip op. at 15. We concluded that "arising out of patient care" simply requires a causal connection between the patient's medical care and the alleged injury. *Brucker*, slip op. at 17. Applying the plain meaning of this phrase to the plaintiff's case, we held that the alleged injury to the plaintiff and Robert did indeed arise out of the patient care received by the plaintiff. The plaintiff consulted the defendant doctor concerning an allergy problem and, based on that consultation, the defendant prescribed L-glutamine for the plaintiff. We rejected the plaintiff's argument that the injuries arose out of the defendant's sale of nutritional supplements, noting that the defendant did not hold himself out as a retailer of supplements, nor did he maintain a retail area in his office for the sale of the supplements. In addition, the plaintiff was not sold the supplement as a member of the general public, but rather as the defendant's patient. Accordingly, there was a causal connection between the patient care provided to the plaintiff and her alleged injury. *Brucker*, slip op. at 18.

The question remains whether plaintiff here has alleged an injury arising out of patient care. In addressing this question, plaintiff focuses on Loyola's failure to notify her and argues that this omission did not involve the provision of medical care. However, the omission itself cannot be viewed in a vacuum. Plaintiff's allegations of a duty to

-11-

notify her and Loyola's alleged violation of that duty flows from the blood transfusion she received during her 1989 hospitalization. This case is unlike the situation in *Cammon* (claim against hospital for spoliation of evidence was unrelated to any patient care). It is apparent here that there is a causal connection between plaintiff's 1989 hospitalization and blood transfusion and her current claim against Loyola. Accordingly, her claim arises out of patient care.

Our decision is in keeping with the purpose behind the statute of repose. Were we to endorse plaintiff's position, we would be opening the door to potentially open-ended liability for health-care providers anytime new medical tests were developed that might suggest the need for a notification program for present and former patients. This obligation might even include patients with whom a hospital may have had no contact for many years. Such a result would undermine the purpose behind the enactment of the medical malpractice statute of repose. That statute was part of the legislative response to a medical malpractice insurance crisis; the purpose was to reduce the cost of medical malpractice insurance and to assure its continued availability to medical practitioners. *Anderson*, 79 Ill. 2d at 301. The crisis was thought to stem from the advent of the "discovery rule" in the late 1960's, in which a cause of action accrued only when a person learned of an injury or reasonably should have learned of it. Because the application of the discovery rule in malpractice actions created a "long tail" of liability, the ability of malpractice insurance companies to predict future liabilities was reduced. *Anderson*, 79 Ill. 2d at 307. It was in response to this problem that the General Assembly enacted the statute of repose. Allowing plaintiff's action to go forward would be contrary to that purpose. Therefore, we conclude that plaintiff's claim arises out of patient care and is thus subject to the four-year statute of repose contained in section 13–212(a). Since plaintiff brought this action some 13 years after her claim arose, the trial court properly dismissed her lawsuit.

III

Plaintiff argues that, even if her claims against Loyola are barred by the statute of repose contained in section 13–212, Loyola fraudulently concealed the grounds for her cause of action. In the alternative, plaintiff also argues that Loyola should be equitably

-12-

estopped from asserting the statute of repose as a defense to her action.

Section 13–212 explicitly recognizes that fraudulent concealment tolls the running of the statute of limitations/repose. Section 13–215 of the Code (735 ILCS 5/13–215 (West 2002)) provides that when a cause of action is fraudulently concealed, the plaintiff may bring an action within five years of the discovery of the cause of action.

In count I of her third amended complaint, plaintiff alleged a cause of action for constructive fraud. She alleged that because Loyola advised her to be tested for HIV, but did not advise her prior to 2000 to be tested for HCV, she was falsely led to believe that, following her negative test for HIV, the blood she had received in the transfusion was free of all life-threatening viruses. She alleged that her reliance was reasonable, given that she was not a medical professional and that Loyola advised her to be tested for one risk known to the medical community, but not another risk.

The concealment contemplated by section 13–215 must consist of affirmative acts or representations calculated to lull or induce a claimant into delaying filing of his or her claim, or to prevent a claimant from discovering a claim. Mere silence on the part of the defendant is insufficient. *Smith v. Cook County Hospital*, 164 Ill. App. 3d 857, 862 (1987). A plaintiff must plead and prove that the defendant made misrepresentations or performed acts which were known to be false, with the intent to deceive the plaintiff, and upon which the plaintiff detrimentally relied. *Foster v. Plaut*, 252 Ill. App. 3d 692, 699 (1993).

Plaintiff points to no affirmative acts by Loyola that were calculated to conceal a cause of action. The mere act of notifying plaintiff that she should be tested for HIV cannot be transformed into an affirmative act of concealment of the need for HCV testing. Recognizing the absence of affirmative acts or misrepresentations on Loyola's part, plaintiff argues that the general rule requiring affirmative acts of concealment does not apply where the parties have a fiduciary or confidential relationship. In such situations, plaintiff argues, the mere failure to disclose material information, standing alone, is sufficient to toll the statute of repose.

-13-

In support of her argument, plaintiff cites *Hagney v. Lopeman*, 147 Ill. 2d 458 (1992), where this court stated:

> " ' "[i]t is the prevailing rule that, as between persons sustaining a fiduciary or trust or other confidential relationship toward each other, the person occupying the relation of fiduciary or of confidence is under a duty to reveal the facts to the plaintiff (the other party), and that his silence when he ought to speak, or his failure to disclose what he ought to disclose, is as much a fraud at law as an actual affirmative false representation or act; and that mere silence on his part as to a cause of action, the facts giving rise to which it was his duty to disclose, amounts to a fraudulent concealment ***." ' " *Hagney*, 147 Ill. 2d at 463, quoting *Chicago Park District v. Kenroy, Inc.*, 78 Ill. 2d 555, 562 (1980), quoting L. Tellier, Annotation, *What Constitutes Concealment Which Will Prevent Running of Statute of Limitations*, 173 A.L.R. 576, 588 (1948).

*Hagney* involved a suit by relatives of a decedent against the decedent's former attorney alleging self-dealing by the attorney while representing the decedent. The attorney allegedly purchased remainder interests for himself in farmland at a time when he was simultaneously representing the decedent in her effort to purchase the same remainder interests.

Plaintiff also points out that this court has held the relationship between patient and physician is a fiduciary relationship. In *Witherell v. Weimer*, 85 Ill. 2d 146, 159 (1981), we found it beyond doubt that this relationship is one in which the patient places great trust and confidence in the physician's advice and recommendations. Based upon this relationship, plaintiff argues that it was Loyola's duty to provide her with notice of the need to be tested for HCV when Loyola was apprised of the need for such testing in 1996 and 1997 and that Loyola's silence constituted a fraud on plaintiff.

Plaintiff was discharged from Loyola in 1989. Thus, there was no confidential or fiduciary relationship between plaintiff and Loyola in 1996 and 1997, the time plaintiff alleges Loyola should have notified her of the need for HCV testing.

Plaintiff relies on *Blaz v. Michael Reese Hospital Foundation*, 74 F. Supp. 2d 803 (N.D. Ill. 1999). There, the plaintiff was a patient at the hospital as a child, where he received radiation treatments. He was part of a group of patients who were treated with radiation therapy between 1930 and 1960 for some benign conditions of the head and neck. In 1974, the hospital established a program to gather data and conduct research among those who had received the therapy. In 1975, the program notified the plaintiff that he was at increased risk of thyroid tumors because of the radiation treatment he had received. In 1979, the hospital and the doctor who had been put in charge of the program submitted a research proposal to the NIH stating that a study based on the program showed strong evidence of a connection between radiation treatments and various kinds of tumors, including neural tumors. A 1981 questionnaire sent to the plaintiff by the program along with a letter from the doctor said nothing about a strong connection between the treatments the plaintiff had received and tumors. The plaintiff developed neural tumors in 1996 and he sued the hospital and the doctor, alleging that they failed to notify him of their findings and warn him that he might be at greater risk for neural tumors. *Blaz*, 74 F. Supp. 2d at 804.

The district court denied the doctor's motion to dismiss, finding that the doctor had a duty to warn the plaintiff by virtue of his role as the doctor in charge of the program. The court noted that the doctor was responsible for researching the effects of the radiation treatments and for communicating with the former patients who had received those treatments. The district court found that the doctor's position with respect to the program created the kind of "special relationship" that this court had previously required for a finding of duty in the absence of a doctor-patient relationship. *Blaz*, 74 F. Supp. 2d at 806-07.

*Blaz* does not support plaintiff's fraudulent concealment argument. The question in *Blaz* was whether the doctor had a duty to warn the plaintiff. No issue of fraudulent concealment was raised.

Loyola notified plaintiff of the need to be tested for HCV once it had notice that plaintiff was at risk for HCV due to her blood donor's positive HCV test. We reject plaintiff's argument that Loyola's silence in 1996 or 1997, without more, constitutes a fraudulent concealment of a cause of action.

Plaintiff also argues that Loyola should be equitably estopped from relying on the statute of repose because Loyola's notification to plaintiff in 1990 that she should be tested for HIV lulled her into a false sense of security that she was not at risk for any other diseases stemming from her 1989 blood transfusion. This court has set forth the requirements for equitable estoppel as follows:

> "A party claiming estoppel must demonstrate that: (1) the other person misrepresented or concealed material facts; (2) the other person knew at the time he or she made the representations that they were untrue; (3) the party claiming estoppel did not know that the representations were untrue when they were made and when that party decided to act, or not, upon the representations; (4) the other person intended or reasonably expected that the party claiming estoppel would determine whether to act, or not, based upon the representations; (5) the party claiming estoppel reasonably relied upon the representations in good faith to his or her detriment; and (6) the party claiming estoppel would be prejudiced by his or her reliance on the representations if the other person is permitted to deny the truth thereof." *DeLuna v. Burciaga*, 223 Ill. 2d 49, 82-83 (2006).

It is not necessary that the defendant intentionally mislead or deceive the plaintiff. All that is required is that the plaintiff reasonably relied on the defendant's conduct or representations in delaying suit. *DeLuna*, 223 Ill. 2d at 83.

In the instant case, plaintiff relies on Loyola's notification to her of the need to be tested for HIV and Loyola's silence with regard to the need for HCV testing in 1996 and 1997 as somehow misleading plaintiff into believing that the blood she received in the transfusion was free from other diseases. Plaintiff again cites *Witherell* in support of her argument. However, in that case, the defendant doctors had repeatedly assured the plaintiff that she did not have the condition from which she suffered and that it was not caused by the birth control pills she was taking.

Loyola's conduct does not meet the requirements of equitable estoppel. That plaintiff was notified to be tested for HIV does not suggest that she was entitled to assume the donated blood was safe from all other risks. Plaintiff points out that it was reasonable for her

to conclude that if there was a need for further testing, Loyola would notify her of that fact. However, Loyola did notify plaintiff to be tested for HCV when it learned that she was at risk for that virus. We therefore reject plaintiff's fraudulent concealment and equitable estoppel arguments.

## CONCLUSION

We hold that plaintiff's claim arises from patient care and that the statute of repose contained in section 13–212(a) of the Code applies to bar her action. We also reject plaintiff's allegations of fraudulent concealment and equitable estoppel. Accordingly, we affirm the judgment of the appellate court.

*Appellate court judgment affirmed.*

CHIEF JUSTICE THOMAS took no part in the consideration or decision of this case.

JUSTICE KILBRIDE, specially concurring:

The majority relies on this court's decision in *Brucker v. Mercola*, No. 102440 (December 28, 2007), in concluding that the plaintiff's claim arises out of patient care. In *Brucker*, I agreed with the majority's interpretation of the phrase "arising out of patient care." Given the facts of *Brucker*, however, I disagreed with the application of that phrase because the majority placed insufficient emphasis on the fundamental "patient care" component. *Brucker*, slip op. at 40 (Kilbride, J., specially concurring).

In this case, I agree that the plaintiff's claim arises out of patient care. The blood transfusion was undoubtedly an integral component of plaintiff's medical care or treatment and, therefore, is within the plain meaning of "patient care." See *Stiffler*, 965 F.2d at 141; *Brucker*, slip op. at 41 (Kilbride, J., specially concurring). Plaintiff's claim alleging harm from the failure to warn of a possible infection originated from the blood transfusion. Accordingly, plaintiff's claim arose out of patient care and falls within the scope of the medical

-17-

malpractice statute of repose. Thus, I concur in the result reached by the majority despite its reliance on *Brucker*.

JUSTICE BURKE, dissenting:

In the case at bar, we are confronted with the same question we addressed in *Brucker v. Mercola*, No. 102440 (December 28, 2007), that is, whether a claim "arises out of patient care" within the meaning of the medical malpractice statute of repose. Here, as in *Brucker*, the majority holds that a claim "arises out of patient care" if there is a "causal connection" between the claim and the medical care received by the plaintiff. Slip op. at 12 ( "there is a causal connection between plaintiff's 1989 hospitalization and blood transfusion and her current claim against Loyola. Accordingly, her claim arises out of patient care").

I disagreed with the majority's interpretation of the statutory language in *Brucker*, explaining that despite the majority's assertions to the contrary, its interpretation results in a "but for" test, which is overly broad and could not have been intended by the legislature. *Brucker*, slip op. at 49 (Burke, J., specially concurring). For the same reasons, I respectfully dissent in the case at bar.

The alleged facts of this case are not in dispute. In the spring of 1989, plaintiff, Diane Orlak, was a patient at a Loyola University Medical Center (the Foster G. McGaw Hospital) and, while hospitalized, received blood transfusions. In August of 2000, Loyola sent plaintiff a letter informing her that the blood she had received in 1989 might have been tainted with the hepatitis C virus (HCV) and recommended that plaintiff be tested for HCV by her physician. Soon after receiving this notification, plaintiff was tested and learned that she was positive for HCV.

In July 2002, plaintiff filed suit against Loyola, seeking recovery due to Loyola's alleged negligence in: (1) failing to screen the blood administered to her for HCV, (2) failing to notify her in a timely fashion of the need to be tested for HCV, and (3) failing to timely inform her that the donor whose blood she had received tested positive for HCV. Subsequently, plaintiff amended her complaint. In her third amended complaint, which is currently before us, plaintiff added new allegations, namely, that the Federal Drug Administration

-18-

(FDA) issued a general memorandum in 1996 to all hospitals, including Loyola, recommending that they notify patients who had received blood transfusions prior to 1992 to consider getting tested for HCV; and that the National Institute of Health (NIH) had published a "Consensus Development Conference Statement" in March 1997, which recommended that persons who received blood transfusions prior to 1990 be tested for HCV. Plaintiff recast her prior claims under the headings of medical negligence and medical battery, and added two new counts: count I, which alleged constructive fraud, and count IV, which alleged ordinary negligence. In count I, plaintiff contended that because Loyola notified plaintiff in 1990 to be tested for HIV and subsequent testing showed that she was negative for HIV, and because Loyola did not notify her of the need to be tested for HCV until 2000, she was lulled into a false sense of security that the blood she had received in 1989 was safe. Plaintiff further alleged that, as a result of Loyola's failure to notify her of the need to be tested for HCV until 2000, her diagnosis and treatment for HCV were unnecessarily delayed. In count IV, plaintiff alleged that, based on the FDA memorandum and the NIH statement, Loyola knew or should have known, in 1996, or at the latest, 1997, of the necessity of providing notice to her of the need to be tested for HCV and, by delaying notice until 2000, "breached its duty to act with reasonable care," thereby causing her substantial injury.

Loyola moved to dismiss plaintiff's third amended complaint, arguing that all counts were barred by the medical malpractice statute of repose. The circuit court granted Loyola's motion. Plaintiff appealed, arguing that her constructive fraud and ordinary negligence claims should not have been dismissed because the gravamen of these claims was Loyola's failure to provide plaintiff with timely notice, *i.e.*, a breach of an administrative duty, not subject to the medical malpractice statute of repose The appellate court rejected the plaintiff's argument and affirmed the court below.

Now, in this court, the majority affirms the lower courts' rulings. The majority acknowledges the plaintiff's contention that "the question in this case is whether the injury [plaintiff] has alleged arose from patient care or from an administrative decision by Loyola not to send notice of the need to be tested for HCV." Slip op. at 5.

-19-

Nevertheless, the majority never considers whether Loyola's decision was an administrative decision, but simply holds:

> "Plaintiff's allegations of a duty to notify her and Loyola's alleged violation of that duty flows from the blood transfusion she received during her 1989 hospitalization. *** It is apparent here that there is a causal connection between plaintiff's 1989 hospitalization and blood transfusion and her current claim against Loyola." Slip op. at 10-11.

Clearly, what the majority is saying is that, absent the blood transfusion, plaintiff would have no claim for an alleged duty to notify. Thus here, as in *Brucker*, the majority employs a but-for test for determining whether the statute of repose applies. It is evident from the quoted material above that the majority recognizes that plaintiff has alleged the breach of an administrative duty, *i.e.*, that Loyola breached a duty to give plaintiff timely notice of the need to be tested for HVC. Nevertheless, the majority never addresses the nature of plaintiff's claim, finding only that plaintiff's claim is subject to the statute of repose because the alleged breach of this administrative duty would not exist but for the fact that plaintiff received a blood transfusion at Loyola in 1989. I disagree with this analysis. As I explained in *Brucker*, the focus should be on the nature of the alleged wrong, not whether it was "causally related" to patient care. See *Brucker*, slip op. at 49 (Burke, J., specially concurring). Moreover, I find the majority's attempts to distinguish the case at bar from *Cammon v. West Suburban Hospital Medical Center*, 301 Ill. App. 3d 939 (1998), and *Canas v. Al-Jabi*, 282 Ga. App. 764, 639 S.E.2d 494 (2006), to be unpersuasive.

There is no analytical difference between the case at bar and the spoliation-of-evidence claim in *Cammon*. In *Cammon*, plaintiff initially sought recovery for "negligence in [Dr. Tomera's] performance of the surgeries on July 2 and 10, 1992; his misdiagnosis of the inter-abdominal hematoma; his failure to order timely CT scans; and his failure to achieve adequate homeostasis following the exploratory laparotomy." Subsequently, however, plaintiff sought recovery against the hospital, alleging that "West Suburban breached its duty to preserve the operative report for the exploratory laparotomy performed on July 10, 1992, thereby prejudicing her claims against Tomera and West Suburban." The appellate court held that the

-20-

spoliation-of-evidence claim was not subject to the medical malpractice statute of limitations and repose, stating:

> "The breach of duty necessary to support a medical negligence action is the defendant's deviation from the proper medical standard of patient care. *Borowski v. Von Solbrig*, 60 Ill. 2d 418, 423, 328 N.E.2d 301 (1975). The damages suffered in such an action arise out of inappropriate patient care. By contrast, a negligence action for spoliation of evidence is predicated upon a breach of duty to preserve evidence. *Boyd v. Travelers Insurance Co.*, 166 Ill. 2d 188, 195, 652 N.E.2d 267 (1995). Although the plaintiff in an action alleging the negligent destruction of evidence resulting in an inability to prove a cause of action for medical negligence must prove the merits of the underlying medical negligence claim (see *Boyd*, 166 Ill. 2d at 197-98), the fact remains that the damages suffered by the plaintiff in such a case arise from the defendant's destruction of evidence, not the breach of a medical standard of patient care." 301 Ill. App. 3d at 950.

The *Cammon* court recognized that a claim "arises out of patient care," and, thus, falls within the medical malpractice statute of repose, if the claim is one seeking recovery for medical negligence and the alleged breach of duty is a breach of the medical standard of care. This is the same position I took in my special concurrence in *Brucker*. *Brucker*, slip op. at 52 (Burke, J., specially concurring). Nevertheless, the majority does not overturn the determination in *Cammon* but, rather, finds it to be distinguishable, stating, "*Cammon* stands only for the unremarkable proposition that not all negligence actions against physicians or hospitals involve patient care." Slip op. at 6.

The majority's attempt to distinguish *Cammon* from the case at bar cannot withstand scrutiny. The majority holds that, in *Cammon*, the duty to preserve evidence "had nothing whatever to do with patient care." Slip op. at 6. But that is not true. If we were to apply the majority's "causal connection" test, the *Cammon* plaintiff's spoliation-of-evidence claim was clearly *related to* her medical treatment because, absent the fact that the plaintiff in *Cammon* had received medical care at the defendant hospital, she would not have a claim for spoliation of evidence. Moreover, as noted in *Cammon*, the

-21-

plaintiff would have had to prove the merits of the underlying medical negligence claim to recover.

If, as the majority holds, not all negligence actions directed to a medical professional involve patient care and, as a result, are not subject to the medical malpractice statute of repose, how is it that we may determine what negligence actions do not involve patient care? Is it not fair to say that "ordinary negligence" claims are claims which are not predicated on a breach of the medical standard of care and, thus, are not subject to the statute of repose? But if that is true, why is it that the majority never even addresses the nature of plaintiff's claim, which, as alleged by the plaintiff, is an ordinary negligence claim?

The better approach, in my view, was employed by the Georgia appellate court in *Canas*. In *Canas*, the plaintiff received blood transfusions in 1985 and, because there were no tests to detect HIV at that time, the blood he received was not tested for HIV. Soon after, tests were developed for the detection of HIV in donor blood and, in 1988, a Presidential Commission on the Human Immunodeficiency Virus Epidemic issued a recommendation that all persons who received transfusions between 1977 and 1988 should be notified "as soon as practicable" of the need for HIV testing. The defendant hospital

> "did not implement a universal patient notification or 'recall' program as recommended by the Presidential Commission; instead, it implemented a donor look-back program. In that program, if the hospital discovered that a past blood donor was HIV positive, then the hospital would identify all patients who had received that donor's blood or blood products and notify those patients of their possible exposure to HIV."

Because plaintiff's donor never returned to donate blood, plaintiff was never notified of the need to be tested. He learned he was HIV positive several years later when he sought treatment for other illnesses.

In *Canas*, the plaintiff presented evidence that the decision to implement the donor look-back program was an administrative one, "based on concerns about the expense, logistical complexity, and legal implications." The Georgia court of appeals agreed and held that the

plaintiff's claim seeking recovery for the defendant's failure to give him timely notice of the need to be tested for HIV was an ordinary negligence claim because the challenged conduct was not medical diagnosis or treatment but, rather, an administrative decision, unrelated to the delivery of medical care.

In the case at bar, plaintiff has alleged that Loyola employed a donor "look-back" program, similar to the one employed in *Canas*, for deciding when to notify past blood transfusion patients of the need to be tested for HCV. Plaintiff has also alleged that the decision to employ the donor look-back program was an administrative decision and, therefore, as in *Canas*, her claim was one for ordinary negligence. The majority does not explicitly reject the plaintiff's argument that her claim is one for ordinary negligence but, rather, distinguishes *Canas* on the grounds that the Georgia statute of repose applies to actions for "medical malpractice," whereas Illinois' statute of repose applies to all actions "arising out of patient care." However, as I explained in *Brucker*, this is a distinction without a difference. See *Brucker*, slip op. at 52-53 (Burke, J., specially concurring).

The majority does explicitly reject plaintiff's argument that "the fact that the requirements of section 2–622 of the Code (735 ILCS 5/2–622 (West 2002)) do not apply to her case provides further support for her contention that her claims against Loyola do not arise out of patient care." Slip op. at 8. The majority holds that section 2–622 cases are irrelevant because they "focus[ ] only on actions involving some form of medical malpractice" and "the statute of repose at issue here encompasses a much broader range of claims." Slip op. at 8. Thus, the majority concludes that "the inapplicability of section 2–622 to this case does not impact the issue of whether plaintiff's cause of action arises from patient care." Slip op. at 8.

In other words, the majority recognizes plaintiff's claim is one alleging ordinary negligence, but holds that this fact is of no significance. I believe this to be error. In my view, cases that draw a distinction between medical negligence claims and ordinary negligence claims are relevant because medical negligence claims are subject to the statute of repose and ordinary negligence claims are not. Moreover, the majority's failure to recognize this leads to illogical results.

This court's recent decision in *Heastie v. Roberts*, 226 Ill. 2d 515 (2007), provides an illustration of this point. In *Heastie*, the plaintiff was an emergency-room patient who had been restrained and moved to a secluded area because he had no apparent injury, but was drunk, disruptive and deemed a danger to himself and others. While plaintiff was restrained, a fire broke out in the area where plaintiff was being held. The origin of the fire could not be determined. However, there was some evidence that the ignition source might have been a lighter belonging to the plaintiff. Plaintiff brought a negligence action against the hospital, as well as certain security guards, technicians, and nurses, alleging, among other things, that defendants had been negligent because they failed to restrain him properly, failed to search him for contraband before restraining him, and failed to monitor him.

On appeal, the issue in *Heastie* was whether expert medical testimony was necessary to establish the standard of care with regard to plaintiff's claim of negligence based on the hospital personnel's failure to search plaintiff for contraband prior to restraining him and placing him in seclusion. Finding that "[w]hether a hospital patient should be restrained involves the exercise of medical judgment" but "[w]hether the patient should be searched for potentially dangerous contraband before being restrained and sequestered does not" (*Heastie*, 226 Ill. 2d at 553), we held that "plaintiff's failure-to-search claim *** falls within the category of ordinary negligence" and, for that reason, expert testimony was not required. We noted, further:

> "Prerestraint contraband searches are wholly unrelated to the diagnosis or treatment of a patient's condition. They serve no medical function of any kind. Their purpose is purely safety related, specifically, to insure that a patient who is going to be restrained and then left alone will not have access to implements which may be used to effect an escape, inflict harm on himself or others, or destroy property. Such a purpose bears on a hospital's administrative and management functions, not its delivery of medical care." *Heastie*, 226 Ill. 2d at 553.

According to *Heastie*, then, the decision to restrain plaintiff was a medical judgment subject to a medical standard of care, but the decision not to search plaintiff before restraining him was an administrative decision and, therefore, plaintiff's claim based on that

-24-

conduct was one for ordinary negligence. This court was able to make the analytical distinction between ordinary negligence and medical negligence in *Heastie*. There is no reason we should not apply the same analysis in the case at bar.

In the present case, plaintiff has alleged that Loyola decided to notify transfusion recipients according to a donor look-back program, even though it had been recommended by the FDA and NIH in 1996 and 1997 that persons who had received transfusions prior to 1992 be notified of the need to be tested for HCV. Plaintiff further alleges that this decision was an administrative one and that the notice which she was allegedly entitled to receive was neither diagnosis, nor treatment, but was related to her safety and the safety of those around her. Accordingly, plaintiff contends that she has alleged a claim for ordinary negligence which is not subject to the medical malpractice statute of repose. In light of these allegations, I find it wholly insufficient for this court to rule to the contrary based only on the fact that "there is a causal connection between plaintiff's 1989 hospitalization and blood transfusion and her current claim." Slip op. at 12.

In addition, *Heastie* graphically illustrates a logical anomaly created by the majority's interpretation of the "arising out of patient care" language in the statute. *Heastie* holds that the decision not to search a patient for contraband prior to restraining him is an administrative decision "wholly unrelated to the diagnosis or treatment of a patient's condition" and, consequently, expert testimony to establish a medical standard of care is not required. However, had the issue been the applicability of the medical malpractice statute of limitations and repose, there is no question that, using the majority's test, this same negligence claim would be subject to the statute because it is "causally related" to plaintiff's emergency-room care and the "medical decision" to restrain the patient. Absent the fact that the defendants decided to restrain plaintiff (which *Heastie* held was patient care), there would have been no need to search defendant for contraband. Thus, according to *Heastie*, the failure to search a patient is a breach of an administrative decision and, as such, ordinary negligence, yet this same ordinary negligence claim would be subject to the medical malpractice statute of repose because it is related to patient care. There is no logical reason for such disparate treatment.

*Heastie* and *Cammon* highlight the flaws in the majority's analysis. As I explained in *Brucker*, the "causal connection" test for deciding whether the statute of repose applies is a "but-for" test, which is far too broad. Moreover, the fact that the majority believes these cases to be distinguishable demonstrates that the majority's "causal connection" test provides no principled or reasoned means for deciding when the statute of repose applies and when it does not. See *Brucker*, slip op. at 50 (Burke, J., specially concurring).

Finally, as noted above, the majority never looks at the nature of the wrongful conduct, as alleged in plaintiff's complaint, and never resolves the question of whether plaintiff is seeking recovery for the breach of an administrative duty or the breach of a medical standard of care. In short, the majority never directly addresses plaintiff's assertion that she has alleged an ordinary negligence claim. The necessary implication, therefore, is that it does not matter whether a plaintiff's claim is one for ordinary negligence. It will be subject to the medical malpractice statute of repose simply because the claim occurred in the context of medical care. The majority's position sweeps too broadly and is an unwarranted expansion of the medical malpractice statute of repose.

In my view, the proper test for determining whether a claim "arises out of patient care" should be whether the wrongful conduct which is the basis for the claim is medical malpractice. See *Brucker*, slip op. at 51 (Burke, J., specially concurring). In such instances, the alleged breach of duty will be a breach of the medical standard of patient care. See *Cammon*, 301 Ill. App. 3d at 950.

In the case at bar, the wrongful conduct alleged in plaintiff's constructive fraud and ordinary negligence claims is Loyola's failure to give her timely notice of the need to be tested for HCV. The damages plaintiff sought to recover were a result of that conduct, not because she received tainted blood in the first instance. The alleged delay in providing notice has nothing to do with the provision of medical care to plaintiff. As pled, the alleged duty to provide notice of updated information to blood transfusion recipients, if such a duty exists, is an administrative one, separate and independent from the "patient care" plaintiff received in 1989.

It is my view that plaintiff's ordinary negligence and constructive fraud claims do not "arise out of patient care" and are not subject to

-26-

the medical malpractice statute of repose. Accordingly, these claims should not have been dismissed on that basis. I would reverse the lower courts' dismissal of plaintiff's constructive fraud and ordinary negligence claims and remand for further proceedings.

I note that Loyola denies that a duty to provide information to former blood transfusion recipients exists. However, because of the nature of my dissent, I do not reach the issue of whether plaintiff's complaint sufficiently alleges that Loyola owed plaintiff a duty to notify her of the need to be tested for HCV prior to 2000. Thus, I express no opinion on whether plaintiff sufficiently states causes of action for constructive fraud and ordinary negligence such that these claims would necessarily survive a motion to dismiss brought under section 2–615 of the Code of Civil Procedure.