(No. 106546.—

JOHN DOE A., Appellee, v. DIOCESE OF DALLAS *et al.*, Appellants.

*Opinion filed September 24, 2009.*

David Wells and Catherine A. Schroeder, of Thompson Coburn LLP, of St. Louis, Missouri, for appellant Catholic Diocese of Belleville.

.

Jeffrey R. Anderson, Michael Finnegan and Patrick W. Noaker, of St. Paul, Minnesota, and Marci A. Hamilton, of Washington Crossing, Pennsylvania, for appellee.

James A. Serritella, James C. Geoly and Susan M. Horner, of Burke, Warren, MacKay & Serritella, P.C., of Chicago, for *amici curiae* Child Care Association of Illinois *et al.*

Marc Pearlman, Michael Brooks and David Argay, of Kerns Frost & Pearlmann, and David Novoselsky, all of Chicago, for *amici curiae* Illinois Coalition Against Sexual Assault *et al.*

Joseph G. Klest and Christopher T. Gardino, of Schaumburg, and J. Brian Manion, of Weilmuenster & Wigginton P.C., of Belleville, for *amicus curiae* Illinois Trial Lawyers Association.

JUSTICE KARMEIER delivered the judgment of the court, with opinion.

Chief Justice Fitzgerald and Justices Freeman, Thomas, Kilbride, and Garman concurred in the judgment and opinion.

Justice Burke took no part in the decision.

## OPINION

The issue in this case is whether section 13—202.2 of the Code of Civil Procedure, as amended by Public Act 93—356 (735 ILCS 5/13—202.2 (West 2006)), may be applied to permit an action for personal injury based on childhood sexual abuse to proceed where that action would otherwise have been time-barred under the law as it existed when the amendment took effect. The circuit court of St. Clair County held that the amendment could

not be applied to permit the action to go forward and therefore granted a motion to dismiss the plaintiff's cause of action with prejudice under section 2—619(a)(5) of the Code of Civil Procedure (735 ILCS 5/2—619(a)(5) (West 2006)). The appellate court disagreed. Over the dissent of one justice, it reversed and remanded for further proceedings. 379 Ill. App. 3d 782. We allowed defendants' petition for leave to appeal. 210 Ill. 2d R. 315. For the reasons that follow, we reverse the judgment of the appellate court and affirm the judgment of the circuit court dismissing plaintiff's cause of action with prejudice.

## BACKGROUND

The standards governing this appeal are familiar. A motion to dismiss under section 2—619 of the Code of Civil Procedure (735 ILCS 5/2—619 (West 2006)) admits the legal sufficiency of the complaint, but asserts that some affirmative matter defeats the plaintiff's claim. *Orlak v. Loyola University Health System*, 228 Ill. 2d 1, 6-7 (2007). Among those affirmative matters is that "[t]he action was not commenced within the time limited by law." 735 ILCS 5/2—619(a)(5) (West 2006). That is the basis for the motion filed in this case.

When reviewing an order granting a motion to dismiss under section 2—619, we may consider all facts presented in the pleadings, affidavits, and depositions found in the record. See *Torcasso v. Standard Outdoor Sales, Inc.*, 157 Ill. 2d 484, 486 (1993). The pleadings and supporting documents must be interpreted in the light most favorable to the nonmoving party. *Orlak v. Loyola University Health System*, 228 Ill. 2d 1, 7 (2007). Moreover, we afford no deference to the determinations by the lower courts. Section 2—619 motions present a question of law, and we review rulings thereon *de novo*. *DeLuna v. Burciaga*, 223 Ill. 2d 49, 59 (2006).

The pleadings and supporting documents in this case

indicate that when plaintiff was 14 years old, he was sexually molested by defendant Kenneth Roberts, a Catholic priest. At the time of the molestation, which took place in 1984, plaintiff was an eighth-grade student at St. Mary's Parochial School in Belleville and Father Roberts was spending a week at the school as a guest lecturer. Among his lecture topics was sex education. Father Roberts was allowed to speak to the children on this topic notwithstanding the fact that church officials were aware that he had previously engaged in the sexual abuse of children, including a boy in Dallas, Texas.

Father Roberts, a former flight attendant of British origin who was ordained in Rome, wrote prolifically on topics related to Catholicism and was well known in the Catholic community, both in the United States and abroad. His published works include the books From Playboy to Priest, Pray it Again Sam, and Nobody Calls it Sin Anymore.

After hearing Father Roberts speak and reading some of Father Roberts' written work, plaintiff came to "know, admire, trust, revere and respect [him] as a person of great influence and persuasion as a holy man, authority figure, clergyman, counselor and spiritual advisor." Father Roberts inspired in plaintiff a desire to become a Catholic priest, and plaintiff sought his advice on how to pursue that calling. During their meeting, however, Father Roberts used his "position of authority, trust, reverence and control as an ordained clergyman" to engage in "harmful and offensive sexual contact" with plaintiff. Specifically, he repeatedly professed his love for plaintiff and kissed plaintiff on the mouth. He also placed his hand on plaintiff's genitals (outside his clothing) and advised plaintiff that if plaintiff elected to become a priest he would have to remain celibate, but "if you can't be with women, I can teach you how to get pleasure either by yourself or with other men." Plaintiff interpreted this

to mean, "I would have to become a homosexual if I want to become a priest. And I don't want to do that—I didn't want to do that." Plaintiff ultimately abandoned aspirations of joining the priesthood and entered the health-care field after graduating from high school and junior college.

Following this incident, other reports of sexual misconduct by Father Roberts surfaced. In 1989, the bishop of the Peoria Diocese advised the Archbishop of St. Louis that Roberts had engaged in inappropriate conduct of a sexual nature with a boy in Peoria in 1983. Five years later, Father Roberts was also reported to have had sexual contact in 1980 with two young men in St. Louis who had sought his counsel regarding entering the priesthood.

In 1994, the Archdiocese of St. Louis revoked Father Roberts' right to "celebrate Mass publicly, hear confessions, give spiritual talks and retreats or offer spiritual counseling." The following year, the bishop of the Diocese of Dallas forced Roberts to retire under restriction. He was not to make any public appearances or accept any speaking engagements, he was to have no connection with youth activities, and his future ministry was confined to writing. When Father Roberts subsequently violated those restrictions, the bishop of the Diocese of Dallas barred him from the exercise of priestly duties and banned him from wearing clerical garb and from representing himself as a priest in good standing with the Diocese of Dallas or the Roman Catholic Church. The ban was conveyed to the United States Catholic Conference, which notified all bishops in the United States of Roberts' suspended status.

Plaintiff did not disclose Father Roberts' sexual abuse to anyone until 1998, when acute psychological problems forced plaintiff to leave work and seek treatment at the emergency room of a hospital in St. Louis, Missouri. He

ultimately filed this lawsuit in November of 2003, naming as defendants not only Father Roberts, but also three administrative and territorial units of the Catholic Church with which Father Roberts had been affiliated, the Diocese of Dallas, the Diocese of Belleville, and the Archdiocese of St. Louis.

Plaintiff's complaint contained seven counts. Count I sought damages for the sexual abuse plaintiff suffered. Count II alleged breach of fiduciary duty. Count III asserted a claim for negligent supervision. Count IV alleged that the organizational defendants had been negligent in retaining Father Roberts despite his "dangerous and exploitive propensities as a child sexual abuser." Count V was based on common law fraud. Count VI alleged "fiduciary fraud." Count VII sought recovery for intentional infliction of emotional distress.

Two of the defendants, the Diocese of Dallas and the Archdiocese of St. Louis, moved to dismiss on the grounds that the courts of Illinois had no basis for asserting jurisdiction over them or their property. See 735 ILCS 5/2—301 (West 2006). A third defendant, the Diocese of Belleville, appeared and answered and asserted various affirmative defenses, including that plaintiff's cause of action was barred by the applicable statutes of limitation and/or the doctrine of *laches*. The final defendant, Father Roberts, filed a motion to dismiss under section 2—619(a) (735 ILCS 5/2—619(a) (West 2006)). As grounds for that motion, Father Roberts argued that the courts of Illinois could not assert personal jurisdiction over him and that, even if jurisdiction was proper, plaintiff's cause of action was time-barred under Illinois law.[1] Father Roberts

---

[1]Section 2—301 of the Code of Civil Procedure (735 ILCS 5/2—301 (West 2006)) specifically authorizes motions objecting to personal jurisdiction to be combined with motions to dismiss on other grounds, provided the parts of the combined motion are

subsequently filed an amended motion to dismiss which dropped the jurisdictional challenge, but bolstered his challenge based on the statute of limitations with an alternative request for summary judgment.

On February 1, 2006, a hearing was held in the circuit court of St. Clair County on the jurisdiction issues advanced by the Diocese of Dallas and the Archdiocese of St. Louis. Counsel for Father Roberts also appeared at the hearing and was allowed to present arguments in support of Roberts' motion to dismiss based on expiration of the applicable limitations period. According to Roberts' lawyer, plaintiff's cause of action was governed by the statutory limitation period as amended in 1994. Under that statute, codified as section 13—202.2 of the Code of Civil Procedure (735 ILCS 5/13—202.2 (West 1994)), actions for personal injury based on an act of sexual abuse occurring before the person abused attained the age of 18 had to be commenced

"within 2 years of the date the person abused discovers or through the use of reasonable diligence should discover that the act of childhood sexual abuse occurred and that the injury was caused by the childhood sexual abuse." 735 ILCS 5/13—202.2(b) (West 1994).

According to Roberts' lawyer, the date on which the statute of limitations began to run in this case was 1998, when plaintiff sought care at the St. Louis University Hospital. There was no dispute that plaintiff had been aware of the sexual abuse earlier. In the view of Roberts' attorney, the 1998 hospital visit served as the triggering event was because it was only then that plaintiff realized that the various physical and mental problems he experienced over the years were causally related to

identified in the manner described in section 2—619.1 of the Code of Civil Procedure (735 ILCS 5/2—619.1 (West 2006)) governing the combination of motions to dismiss, for judgment on the pleadings or for summary judgment.

Roberts' sexual misconduct. Under section 13—202.2(b), he had two years from the 1998 hospital visit to file his complaint. That period expired in December of 2000. Because plaintiff did not bring suit until November of 2003, nearly five years after the hospital visit and three years after the two-year limitation period had ended, Roberts' attorney argued that it was time-barred.

In response, counsel for plaintiff argued that plaintiff's cause of action should be governed by the version of section 13—202.2 of the Code of Civil Procedure as amended in 2003 and currently in effect (735 ILCS 5/13—202.2 (West 2006)). By its terms, that version of the law applies to all actions pending on its July 24, 2003, effective date as well as to actions commenced on or after that date, as this one was. 735 ILCS 5/13—202.2(e) (West 2006). It provides that actions for damages for personal injury based on childhood sexual abuse must be commenced within 10 years of the abused person's eighteenth birthday (longer if, at the time the abused person attains the age of 18, he or she is under a disability) or

> "within 5 years of the date the person abused discovers or through the use of reasonable diligence should discover both (i) that the act of childhood sexual abuse occurred and (ii) that the injury was caused by the childhood sexual abuse." 735 ILCS 5/13—202.2(b) (West 2006).

Adhering to defense counsel's view that plaintiff did not discover that his mental and physical problems were caused by his childhood abuse until he sought treatment at St. Louis University Hospital in 1998, plaintiff's attorney asserted that the statute, as amended, gave plaintiff five years from the hospital visit to bring suit. Plaintiff's complaint was filed approximately 4 years and 11 months following the visit. Plaintiff's lawyer argued that it was therefore timely.

Father Roberts' attorney argued that the version of section 13—202.2 as amended in 2003 (735 ILCS 5/13—

202.2(b) (West 2006)) could not be applied to this case. While the statute, by its terms purported to apply to all causes of actions pending on or filed after its effective date, Father Roberts' attorney contended that because plaintiff's cause of action was already time-barred under the prior law years before the 2003 amendments took effect, allowing the lawsuit to go forward now would deprive him of a vested right in violation of the due process protections of the Illinois Constitution (Ill. Const. 1970, art. I, §12).

Following the hearing, the circuit court entered a written order in which it held that plaintiff's cause of action was governed by the version of section 13—202.2 as amended in 1994 (735 ILCS 5/13—202.2(b) (West 1994)), that the cause of action was already time-barred under that statute by the time plaintiff filed suit, and that the version of section 13—202.2 as amended in 2003 (735 ILCS 5/13—202.2(b) (West 2006)) could not be applied to revive plaintiff's claims. It therefore dismissed plaintiff's cause of action with prejudice as to all defendants. In light of that decision, it did not reach the jurisdictional questions raised by the Diocese of Dallas or the Archdiocese of St. Louis.

Plaintiff moved for reconsideration. After that motion was denied, he appealed to the appellate court. In that appeal, plaintiff first argued that the circuit court erred in dismissing his cause of action, in its entirety, against all defendants based on the statute of limitations when Father Roberts was the only defendant who moved to dismiss on the grounds that plaintiff's claims were time-barred. The appellate court rejected that argument, holding that a cause of action may be dismissed on limitation grounds as to all defendants in cases such as this one where (1) at least one defendant has moved for dismissal based on the statute of limitations and (2) the nonmoving defendants occupy a position similar to that

of the moving party or the claims against all defendants are integrally related. 379 Ill. App. 3d at 786.

While the appellate court found no procedural obstacle to dismissal of plaintiff's entire cause of action against all defendants, it believed that the circuit court's dismissal order was fatally infirm on the merits. In the appellate court's view, the legislature clearly intended the version of section 13—202.2 as amended in 2003 (735 ILCS 5/13—202.2(b) (West 2006)) to apply retroactively, as well as prospectively. The court therefore concluded that the reach of the statute extended even to cases such as this one, where the allegations of abuse relate to events which took place prior to the law's enactment. Looking to the legislature's motive in enacting the amendment, how far back in time the amendment would apply, and whether Father Roberts relied on the prior version of the law to his detriment, the court concluded that, on balance, retroactive application of the law would not offend due process. It therefore reversed the circuit court's dismissal order and remanded to that court for further proceedings. 379 Ill. App. 3d at 793-94. In so doing, the court expressly declined to follow two prior appellate court decisions, *Galloway v. Diocese of Springfield in Illinois*, 367 Ill. App. 3d 997 (2006), and *Kuch v. Catholic Bishop of Chicago*, 366 Ill. App. 3d 309 (2006), including one by a different panel from the same district (*Galloway*), which reached a contrary result based on analogous facts.

One justice dissented. He believed that the 2003 amendments to 13—202.2 (735 ILCS 5/13—202.2(b) (West 2006)) could not, consistent with due process, operate to revive a claim which would otherwise have been time-barred when the new law took effect. He would have followed his own district's earlier opinion in *Galloway v. Diocese of Springfield in Illinois*, 367 Ill. App. 3d 997

(2006), and affirmed the circuit court's judgment. 379 Ill. App. 3d at 794-95 (Donovan, J., dissenting).

The Diocese of Belleville petitioned for leave to appeal. 210 Ill. 2d R. 315. The Diocese of St. Louis and Father Roberts sought and were granted leave to join in that petition, and the petition was allowed.[2] The court subsequently permitted the Child Care Association of Illinois, Agudath Israel of America, the Catholic Conference of Illinois, the Northern Illinois District of the Lutheran Church-Missouri Synod, the General Council on Finance and Administration of the Methodist Church, and the Greek Orthodox Archdiocese of America to file a friend of the court brief in support of the Diocesan defendants and Father Roberts. In addition, we allowed the Illinois Trial Lawyers Association and a group consisting of the Illinois Coalition Against Sexual Assault, the Leadership Council on Child Abuse & Interpersonal Violence, the National Association for the Prevention of Sexual Abuse of Children, the National Center for Victims of Crime and the Victim Rights Law Center to file friend of the court briefs in support of plaintiff. See 155 Ill. 2d R. 345.

## ANALYSIS

The central issue on this appeal is whether the version of section 13—202.2 of the Code of Civil Procedure as amended in 2003 (735 ILCS 5/13—202.2(b) (West 2006)) governs plaintiff's cause of action. Resolution of that question necessarily turns on whether the 2003 amendment applies retroactively. If it does, there is no dispute that the cause of action should not have been dismissed as untimely. If it does not, the circuit court was correct to dismiss the cause of action with prejudice,

---

[2]The Diocese of Dallas neither filed its own petition for leave to appeal nor joined in the petition filed by the Diocese of Belleville, and it is not a party to this appeal.

and its judgment should not have been reversed by the appellate court.

The principles governing our analysis of whether a statute applies retroactively were summarized by this court in *Allegis Realty Investors v. Novak*, 223 Ill. 2d 318, 330-32 (2006). As discussed in that opinion, we have adopted the approach set forth by the United States Supreme Court in *Landgraf v. USI Film Products*, 511 U.S. 244, 128 L. Ed. 2d 229, 114 S. Ct. 1483 (1994). See *Commonwealth Edison Co. v. Will County Collector*, 196 Ill. 2d 27, 37-39 (2001).

The *Landgraf* analysis consists of multiple steps. The threshold inquiry is whether the legislature has expressly prescribed the temporal reach of a statute. If it has, the expression of legislative intent must be given effect absent a constitutional prohibition. If, however, the statute contains no express provision regarding its temporal reach, the court must determine whether the new statute would have retroactive effect, keeping in mind the general principle that prospectivity is the appropriate default rule. In making this determination, a court will consider whether retroactive application of the new statute will impair rights a party possessed when acting, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If retrospective application of the new law has inequitable consequences, a court will presume that the statute does not govern absent clear legislative intent favoring such a result. *Allegis Realty Investors v. Novak*, 223 Ill. 2d at 330-31 (citing *Landgraf*, 511 U.S. at 280, 128 L. Ed. 2d at 262, 114 S. Ct. at 1505, and *Commonwealth Edison Co.*, 196 Ill. 2d at 38).

Following our adoption of the *Landgraf* approach, we considered the effect of section 4 of the Statute on Statutes (5 ILCS 70/4 (West 1998)) on our retroactivity analysis. *Allegis Realty Investors v. Novak*, 223 Ill. 2d at

331. Section 4, known as the general saving clause of Illinois (see *People v. Glisson*, 202 Ill. 2d 499, 505 (2002)), provides:

"No new law shall be construed to repeal a former law, whether such former law is expressly repealed or not, as to any offense committed against the former law, or as to any act done, any penalty, forfeiture or punishment incurred, or any right accrued, or claim arising under the former law, or in any way whatever to affect any such offense or act so committed or done, or any penalty, forfeiture or punishment so incurred, or any right accrued, or claim arising before the new law takes effect, save only that the proceedings thereafter shall conform, so far as practicable, to the laws in force at the time of such proceeding." 5 ILCS 70/4 (West 2006).

We have held that section 4 is a clear legislative directive as to the temporal reach of statutory amendments and repeals when none is otherwise specified: those that are procedural may be applied retroactively, while those that are substantive may not. *Caveney v. Bower*, 207 Ill. 2d 82, 92 (2003). This principle applies to civil as well as criminal enactments. *Caveney v. Bower*, 207 Ill. 2d at 92-93. We have further held that, in light of section 4, Illinois courts need never go beyond the threshold step of the *Landgraf* test. That is because the legislature will always have clearly indicated the temporal reach of an amended statute, either expressly in the new legislative enactment or by default in section 4 of the Statute on Statutes. *Allegis Realty Investors v. Novak*, 223 Ill. 2d at 331-32, citing *Caveney v. Bower*, 207 Ill. 2d at 95.

Because section 4 of the Statute on Statutes operates as a default standard, it is inapplicable to situations where the legislature has clearly indicated the temporal reach of a statutory amendment. Whenever a court is called upon to assess the applicability of a statutory change, it must therefore still make an initial determination as to whether the legislature has clearly indicated

the temporal reach of the amended statute. If the temporal reach of a statute has been clearly indicated, there is no need to invoke section 4. Pursuant to *Landgraf*, the expression of legislative intent must be given effect absent constitutional prohibition. *Allegis Realty Investors v. Novak*, 223 Ill. 2d at 332.

The matter before us today is one in which the legislature has clearly indicated when the relevant statute applies. Section 13—202.2(e) of the Code of Civil Procedure (735 ILCS 5/13—202.2(e) (West 2006)) specifically provides that the 2003 amendment applies to actions pending when the changes took effect on July 24, 2003, as well as to "actions commenced on or after that date." By its terms, the amendment is not limited to situations where the events giving rise to the cause of action took place after the amendment's effective date. Under the standards adopted by this court, the version of section 13—202.2 as amended in 2003 therefore governs plaintiff's cause of action unless application of the amendment would violate the constitution.

Whether a statute is constitutional and whether a party's constitutional rights have been violated are matters we review *de novo*. *Allegis Realty Investors v. Novak*, 223 Ill. 2d at 334; *In re A.W.*, 231 Ill. 2d 92, 106 (2008). In our view, the 2003 amendment to section 13—202.2 (735 ILCS 5/13—202.2 (West 2006)) could not be applied to plaintiff's cause of action without running afoul of this state's constitution. That is so under this court's decision in *M.E.H. v. L.H.*, 177 Ill. 2d 207 (1997).

Plaintiffs in *M.E.H.* were two sisters who claimed they had been sexually abused by their father beginning when they were four and continuing through high school. In 1994, when both plaintiffs were in their forties, they brought suit against their father for the sexual abuse they had suffered as children. They also sued their mother on the grounds that she had failed to protect

them from their father's abuse. *M.E.H.*, 177 Ill. 2d at 210.

Plaintiffs alleged that the trauma they experienced as a result of the abuse caused them to repress their memories of what occurred, prevented them from understanding the impact of the assaults, and impaired them so that they were incapable of comprehending or asserting their rights more promptly. According to their complaint, plaintiffs were able to recall the abuse only after receiving psychological therapy, and they acted diligently by filing suit within two years of discovering the abuse and the injuries it caused. *M.E.H.*, 177 Ill. 2d at 210.

In making that claim, plaintiffs took the view that their cause of action was governed by the version of section 13—202.2 as amended in 1994 (735 ILCS 5/13—202.2 (West 1994)) and that they had acted seasonably to comply with the time limitations set forth in that version of the law. Defendants disagreed and moved to dismiss on the grounds that plaintiffs' cause of action was filed too late. Defendants' motion was granted, the appellate court affirmed, and we granted plaintiffs leave to appeal. *M.E.H.*, 177 Ill. 2d at 212-13.

When the matter reached our court, the sole issue was the timeliness of plaintiffs' claims against their father. As to him, the circuit court had concluded that plaintiffs' claims were time-barred under the version of section 13—202.2 in effect prior to the 1994 amendment. That version of the law contained a 12-year period of repose which precluded litigants from commencing an action for personal injuries based on childhood sexual abuse more than 12 years after the date on which they attained the age of 18. The effect of that law was to bar anyone over the age of 30 from bringing an action for personal injury based on childhood sexual abuse. Both plaintiffs fell within that category of litigants. *M.E.H.*, 177 Ill. 2d at 213-14.

In analyzing the case, we agreed with the appellate court that the circuit court's ruling was correct. While the 12-year statute of repose was repealed in 1994, approximately 10 months before plaintiffs actually filed suit, we held that the repeal did not aid the viability of plaintiffs' claims because

"once a statute of limitations has expired, the defendant has a vested right to invoke the bar of the limitations period as a defense to a cause of action. That right cannot be taken away by the legislature without offending the due process protections of our state's constitution." *M.E.H.*, 177 Ill. 2d at 214-15.

Accordingly, we held, "[i]f the claims were time-barred under the old law, they remained time-barred even after the repose period was abolished by the legislature." *M.E.H.*, 177 Ill. 2d at 215.

These principles date back more than a century. See *Board of Education of Normal School District v. Blodgett*, 155 Ill. 441, 446 (1895) ("when the bar of a statute of limitations has become complete by the running of the full statutory period, the right to plead the statute as a defense is a vested right, which cannot be destroyed by legislation, since it is protected therefrom by section 2 of the bill of rights incorporated in the State constitution, which declares that 'no person shall be deprived of life, liberty or property without due process of law' "). They have been consistently followed by this court. See *Sepmeyer v. Holman*, 162 Ill. 2d 249, 254-55 (1994) ("Our cases have been uniform in holding that the legislature lacks the power to reach back and breath life into a time-barred claim *** [and] [w]e find the issue well settled that the expiration of the statute of limitations creates a vested right beyond legislative interference"). They remain valid today. See *Clay v. Kuhl*, 189 Ill. 2d 603, 609 (2000) ("under Illinois law, the barring of an action by a statute of limitations creates a vested right in favor of the defendant, and the action cannot later be revived").

Of course, unlike *M.E.H.*, the 12-year statute of repose set forth in the version of section 13—202.2 in effect in 1991 is not at issue here. In this case, the 12-year repose period would not have expired until 2000, six years after it was repealed by the 1993 amendment to section 13—202.2 which took effect in 1994. Because the repose period was eliminated before it expired, there was never a time when it operated to insulate defendants from liability. As a result, any right to repose defendants may ultimately have been able to claim under the 1991 version of the law never vested and conferred on defendants no constitutional protections.

A different result pertains with respect to the version of section 13—202.2 in effect following the 1993 amendment. As the circuit court correctly recognized, plaintiff's cause of action was already time-barred under that version of the law by the time plaintiff filed suit. Under the line of authorities including *M.E.H. v. L.H.*, 177 Ill. 2d 207 (1997), the version of section 13—202.2 as amended in 2003 (735 ILCS 5/13—202.2(b) (West 2006)) therefore could not be applied to revive plaintiff's claims.

Other panels of our appellate court have reached the same conclusion when examining the effect of the version of section 13—202.2 as amended in 2003 on childhood sexual abuse cases that were already time-barred under prior versions of the statute. See *Galloway v. Diocese of Springfield in Illinois*, 367 Ill. App. 3d 997 (2006); *Softcheck v. Imesch*, 367 Ill. App. 3d 148, 154 (2006); *Kuch v. Catholic Bishop of Chicago*, 366 Ill. App. 3d 309 (2006). While the appellate court majority here ruled otherwise, holding that the 2003 amendment to section 13—202.2 could be invoked to resuscitate an otherwise time-barred childhood sexual abuse claim, its analysis is premised on a misreading of our precedent.

The appellate court majority construed this court's decision in *Commonwealth Edison Co. v. Will County*

*Collector*, 196 Ill. 2d 27 (2001), adopting the *Landgraf* test as effectuating a change in the standards employed by this court for determining when a vested right has been impermissibly infringed for purposes of the due process clause of the Illinois Constitution. See 379 Ill. App. 3d at 790. This was not our intention. We adopted the *Landgraf* approach, with its focus on legislative intent, because we believed it provided the appropriate framework for evaluating whether a new law should apply to existing controversies and because it did so in a way which adequately resolved the tension apparent in prior case law which sometimes focused on the intent of the legislature and sometimes looked simply to the law in effect at the time the matter came before the court unless applying that version of the law would interfere with a vested right. *Commonwealth Edison Co. v. Will County Collector*, 196 Ill. 2d at 39. The *Commonwealth Edison Co.* case did not purport to redefine what constitutes a vested right or alter the standards for determining when interference with such a right rose to the level of a constitutional violation under the due process provisions of the Illinois Constitution. To the contrary, its discussion of our prior precedent made clear that the standards we had previously articulated for determining which interests are protected from legislative interference by the due process clause of the Illinois Constitution remain relevant even after adoption of the *Landgraf* test. *Commonwealth Edison Co. v. Will County Collector*, 196 Ill. 2d at 47. Accordingly, while *Commonwealth Edison Co. v. Will County Collector* switched the focus of the first step of the retroactivity analysis from "vested rights" to legislative intent, it did not overrule the long-established rule followed in *M.E.H.*, 177 Ill. 2d at 214-15, that once a claim is time-barred, it cannot be revived through subsequent legislative action without offending the due process protections of our state's

constitution. See *Galloway v. Diocese of Springfield in Illinois*, 367 Ill. App. 3d at 1000.[3] To the extent that the Third District's recent decision *M.K. v. L.C.*, 387 Ill. App. 3d 1077, 1092 (2009), reached a contrary conclusion, it is hereby overruled.

Plaintiff argues that regardless of how this court rules with respect to the timeliness of his other claims, the claims he asserts for fraud remain viable because (1) they are subject to the five-year limitations period set forth in section 13—205 of the Code of Civil Procedure (735 ILCS 5/13—205 (West 2006)), (2) the five-year period did not begin to run until the fraud was discovered or should have been discovered through the exercise of reasonable diligence, and (3) he brought this action within that five-year period. Indeed, plaintiff asserts that he filed suit within two years of discovering defendants' fraud, making his cause of action timely even under the shorter two-year limitations period for personal injury (735 ILCS 5/13—202 (West 2006)).

---

[3]In concluding that *Commonwealth Edison Co. v. Will County Collector* represented a change in the law, the appellate court majority found significance in our application of a balancing test under step two of the decision's retroactivity analysis, which addressed whether retroactive application of tax-related statutory amendments would violate the taxpayer's due process rights. Defendants respond by contending that such a balancing analysis is "unique to the context of retroactive tax rate adjustments" and should not be extended to cases such as this. In reality, balancing competing factors when assessing due process claims is neither novel nor unique. It is a conventional part of procedural due process analysis. See, *e.g.*, *In re D.T.*, 212 Ill. 2d 347, 361-62 (2004). The reason we need not undertake such a balancing test in the situation before us today is that it is unnecessary. Case law already tells us what the answer must be. Under *M.E.H.* and the cases which proceeded it, once the time has passed in which a claim may be asserted, due process prohibits legislative action that would resuscitate it.

This argument must fail. While the two fraud counts in plaintiff's complaint add allegations that defendants deceived plaintiff by withholding information regarding Father Roberts' history and their knowledge of that history, it is clear from the complaint that all of the injuries claimed by plaintiff ultimately arose from the sexual abuse he suffered rather than from defendants' failure to properly apprise plaintiff regarding Father Roberts' past and what they knew about it. The specific injuries alleged in the fraud counts are, in fact, identical to those set forth in the other counts. They include "severe and permanent emotional distress, terror, embarrassment, loss of self-esteem, disgrace, humiliation, loss of enjoyment of life, loss of religious faith, difficulty in practicing religion through the church, severe psychological injury, and deprivation of earning capacity" as well as "expenses for psychological treatment, therapy and counseling."

The law is well established that the limitations period governing a claim is determined by the nature of the plaintiff's injury rather than the nature of the facts from which the claim arises. *Armstrong v. Guigler*, 174 Ill. 2d 281, 286 (1996). Because the injuries alleged in the fraud counts are the same as those alleged in the counts governed by the limitations period for actions for damages for personal injury based on childhood sexual abuse, they are likewise subject to the childhood sexual abuse limitations period. The five-year limitations period set forth in section 13—205 (735 ILCS 5/13—205 (West 2006)), which would apply to a fraud claim (see *Chicago Park District v. Kenroy, Inc.*, 78 Ill. 2d 555, 560 (1980) (applying prior codification of the statute)), is inapplicable. See *Pavlik v. Kornhaber*, 326 Ill. App. 3d 731, 748 (2001).

Finally, we note that the bar of a statute of limitations does not go to the court's jurisdiction to hear a case. Rather, it is an affirmative defense which a defendant may, in its sole discretion, assert or waive. See

*City of Naperville v. Mann*, 378 Ill. App. 3d 657, 660 (2008). Defendants in this case have elected to invoke the defense, and they alone are responsible for that decision and its impact on plaintiff's ability to seek relief through the courts. Our function, as a court of review, is simply to insure that the law is applied correctly. It was applied correctly by the circuit court here.

## CONCLUSION

For the foregoing reasons, the judgment of the circuit court dismissing plaintiff's cause of action with prejudice is affirmed. The judgment of the appellate court, which set aside the circuit court's judgment and remanded for further proceedings, is reversed.

*Appellate court judgment reversed;*
*circuit court judgment affirmed.*

JUSTICE BURKE took no part in the consideration or decision of this case.