# Illinois Official Reports

## Appellate Court

---

### *Mulry v. Berrios*, 2017 IL App (1st) 152563

---

| | |
|---|---|
| Appellate Court Caption | BARBARA R. MULRY, Plaintiff-Appellant, v. JOSEPH BERRIOS, not Individually But in His Capacity as the Cook County Assessor; THE COOK COUNTY ASSESSOR'S OFFICE; and THE COOK COUNTY ASSESSOR'S OFFICE DEPARTMENT OF ERRONEOUS HOMESTEAD EXEMPTION ADMINISTRATIVE HEARINGS, Defendants-Appellees. |
| District & No. | First District, Fourth Division<br>Docket No. 1-15-2563 |
| Filed | March 16, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 14-COAC-000004; the Hon. Sharon M. Sullivan, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Carey White Boland Murnighan & Murray, LLC, of Chicago (Edmund P. Boland and Michael J. Murray, of counsel), for appellant.<br><br>Anita M. Alvarez, State's Attorney, of Chicago (Donald J. Pechous, Elizabeth Novy, and Margarett S. Zilligen, Assistant State's Attorneys, of counsel), for appellees. |

| Panel | JUSTICE McBRIDE delivered the judgment of the court, with opinion.
Presiding Justice Ellis and Justice Burke concurred in the judgment and opinion. |

**OPINION**

¶ 1  In 2013, the General Assembly adopted the "Erroneous homestead exemptions" section of the Property Tax Code (Code) (35 ILCS 200/1-1 *et seq.* (West 2014)), setting out procedures for the Cook County assessor's office, once it has discovered that a property owner has been erroneously granted a homestead exemption, to recoup unpaid taxes and 10% annual interest and impose 50% penalties and liens. See Pub. Act 98-93, § 5 (eff. July 16, 2013) (adding 35 ILCS 200/9-275). A homestead is a property taxpayer's primary residence and the legislature has granted limited homestead exemptions from taxation to certain groups, such as military veterans, senior citizens, and long term occupants. See 35 ILCS 200/9-275(a) (West 2014). The main question presented by Evergreen Park property owner Barbara R. Mulry is whether the statute adopted in 2013 encompasses tax years 2010, 2011, and 2012. Mulry contends the statute has been applied retroactively in violation of the contract clause and due process guarantee of the state and federal constitutions and that an administrative hearing officer's decision in favor of tax assessment and 10% interest is primarily based on computer records admitted into evidence without adequate foundation.

¶ 2  In 2014, the Cook County assessor's office notified taxpayer Mulry that she was not eligible to take homestead exemptions for tax years 2010, 2011, and 2012 for 9135 South Springfield Avenue, Evergreen Park, Illinois, 60805-1459. The notice indicated Mulry was liable for unpaid taxes and annual interest and that her property was subject to a lien. The notice specified that Mulry owed $4188.60, consisting of $1876.80 principal and $563.04 interest for tax year 2010, $664.20 principal and $132.84 interest for tax year 2011, and $865.20 principal and $86.52 interest for tax year 2012. Mulry sought an administrative hearing to contest the allegations of erroneous homestead exemptions, and the matter proceeded to hearing on May 15, 2014.

¶ 3  At the hearing, Mulry objected to the admission into evidence of computer printouts showing that she received a homestead exemption for two different Illinois properties for the three tax years at issue. After a brief continuance, the assistant State's Attorney called Joseph Accardi, an employee of the Cook County assessor's office, to testify. Accardi testified that during the course of his investigation into Mulry's exemptions, he printed records from the assessor's database, that the printed records proffered in the courtroom were kept in the normal course of business at the Assessor's Office, and that he had accessed them from the assessor's computer system by logging in as an individual and then entering the PIN numbers for both properties. Mulry objected to the sufficiency of this foundation, but the hearing officer overruled the objection. Accardi then testified that the documents showed exemptions had been taken for both properties for the three tax years at issue. Mulry waived cross-examination. The assistant State's attorney moved to admit the documents into evidence, and, over Mulry's objection, the hearing officer admitted these documents, as well as others.

¶ 4    Mulry testified that she and her husband, Timothy P. Mulry, have owned and resided for more than 30 years at 9139 South Springfield Avenue, Evergreen Park, Illinois, 60805-1459, which is next door to the property now at issue. Mulry inherited the subject property, 9135 South Springfield Avenue, from her widowed uncle, James Leo Brogan, who passed away on September 23, 2001. She has never resided in her uncle's former house and has rented it out more or less continuously since her inheritance. Until she received the assessor's notice in 2014, she was unaware her uncle had a general homestead exemption in effect for his property. Since her inheritance, she has not looked at any tax bills and has merely signed checks that her husband has prepared to pay the tax bills. Her husband has also prepared checks to pay the taxes on their residence. Mulry tendered into evidence documents substantiating her uncle's death and her inheritance of the property title.

¶ 5    The assistant State's Attorney then argued the proceedings established that Mulry took simultaneous exemptions for the two properties and that the law entitled her to an exemption only for her primary residence. Mulry's attorney countered that the erroneous homeowner's exemption statute was being improperly applied. The hearing officer rejected Mulry's statutory argument, found that the preponderance of the evidence was in favor of the State of Illinois, and ruled that Mulry owed $4188.60.

¶ 6    Mulry sought review in the circuit court of Cook County, and when those proceedings also concluded in the State's favor, she sought this further review in the appellate court.

¶ 7    When a party appeals from the circuit court's decision on a complaint for administrative review, we review the decision of the administrative agency rather than the decision of the circuit court. *White v. Retirement Board of Policemen's Annuity & Benefit Fund*, 2014 IL App (1st) 132315, ¶ 23, 18 N.E.3d 92. The Administrative Review Law provides that our review of an administrative agency decision shall extend to all questions of law and fact presented by the record. 735 ILCS 5/3-110 (West 2014); *White*, 2014 IL App (1st) 132315, ¶ 23, 18 N.E.3d 92.

¶ 8    Mulry first argues that the hearing officer's decision is erroneous because it gives impermissible retroactive application to the statute. She contends that the claimed tax arrears for tax years 2010 through 2012 are all prior to section 9-275's effective date of July 16, 2013 (Pub. Act 98-93, § 5 (eff. July 16, 2013)), and there is no language in the statute indicating the General Assembly intended for the law to apply to conduct occurring before its enactment. Mulry contends her interpretation is supported by the fact that the assessor's office did not implement procedures for conducting section 9-275 hearings until February 26, 2014. The State's Attorney responds that Mulry misunderstands the significance of a statute's effective date and that, under the analysis set forth in numerous Illinois cases, it is permissible for the legislation to be applied as it was written.

¶ 9    Mulry's argument is one of statutory interpretation, which is a question of law we address *de novo*. *White*, 2014 IL App (1st) 132315, ¶ 23, 18 N.E.3d 92; *Branson v. Department of Revenue*, 168 Ill. 2d 247, 254, 659 N.E.2d 961, 965 (1995). The fundamental rule of statutory construction is to determine and give effect to the intent of the legislature. *People ex rel. Madigan v. Lincoln, Ltd.*, 383 Ill. App. 3d 198, 205, 890 N.E.2d 975, 980 (2008). The language of a statute is the most reliable indication of the legislature's objectives in enacting the law. *Lincoln*, 383 Ill. App. 3d at 205, 890 N.E.2d at 980-81. The language is to be given its plain and ordinary meaning, all provisions of an enactment are to be viewed as whole, and words and phrases are to be construed in light of relevant provisions of the statute rather than in isolation. *Lincoln*, 383 Ill. App. 3d at 205, 890 N.E.2d at 980-81. In addition, whenever possible, every

word, clause, and sentence is to be given reasonable meaning and shall not be treated as superfluous or rendered void. *Lincoln*, 383 Ill. App. 3d at 205, 890 N.E.2d at 980-81.

¶ 10   In our opinion, Mulry misconstrues the significance of a statute's effective date, which is simply the date that legislation takes effect or, in other words, becomes governing law. A statute's effective date is not enough to tell us about the General Assembly's intended temporal reach of this enactment. The " 'traditional rule' " is that statutes do not apply retroactively unless the legislators have expressly stated this temporal reach. *Commonwealth Edison Co. v. Will County Collector*, 196 Ill. 2d 27, 37, 749 N.E.2d 964, 971 (2001) (quoting *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 237 (1995)). A statute that has retroactive impact is one that " 'would impair rights a party possessed when he acted, increase a party's liability for past conduct, or imposes new duties with respect to transactions already completed.' " *Commonwealth Edison*, 196 Ill. 2d at 38, 749 N.E.2d at 971 (quoting *Landgraf v. USI Film Products*, 511 U.S. 244, 280 (1994)). The presumption against statutory retroactivity is based on concerns for unfairly affecting property and contract rights. *Commonwealth Edison*, 196 Ill. 2d at 37-38, 749 N.E.2d at 971. Accordingly, courts require the legislature to clearly indicate its intent for retroactive application and, thus, signal that it has considered the potential unfairness and yet determined that retroactive application " 'is an acceptable price to pay for the countervailing benefits.' " *Commonwealth Edison*, 196 Ill. 2d at 37-38, 749 N.E.2d at 971 (quoting *Landgraf*, 511 U.S. at 272-73). Illinois courts follow the retroactivity analysis set out by the United States Supreme Court in *Landgraf*, 511 U.S. 244. *Commonwealth Edison*, 196 Ill. 2d at 39, 749 N.E.2d at 972. Under *Landgraf*, the first question is whether the legislature has clearly indicated the statute's temporal reach. *Commonwealth Edison*, 196 Ill. 2d at 38, 749 N.E.2d at 971. If so, then, absent a constitutional prohibition, that expression of legislative intent must be given effect. *Commonwealth Edison*, 196 Ill. 2d at 38, 749 N.E.2d at 971.

¶ 11   In order to apply *Landgraf* and to adhere to the principles of sound interpretation, we must consider all the relevant language of the statute, rather than merely the date the legislation became effective, as Mulry argues. The statute as a whole created specific procedures through which the chief county assessment officer may recover an unlawfully received tax benefit. Paragraph (a) defines certain terms used in the statute. 35 ILCS 200/9-275(a) (West 2014). Paragraph (b) details the information the chief county assessment officer must include in each assessment notice sent in a general assessment year and indicates that a property owner will not be penalized if, within 60 days after receiving the notice, he or she notifies the officer of the receipt of a homestead exemption in error in a previous assessment year and pays the principal amount of back taxes. 35 ILCS 200/9-275(b) (West 2014). The next five paragraphs of the statute—paragraphs (c), (c-5), (d), (e), and (f)—describe how the chief county assessment officer is to proceed upon realizing that "one or more erroneous homestead exemptions was applied to the property," indicate that the taxpayer may request a hearing of the allegations, set out procedural rules for the taxpayer's request and the hearing, and provide for appeals consistent with the Administrative Review Law. 35 ILCS 200/9-275(c), (c-5), (d), (e), (f) (West 2014). The next five paragraphs—paragraphs (g), (h), (i), (j), and (k)—concern other circumstances not relevant here, such as the impact of clerical errors and how a lien affects the legal rights of *bona fide* purchasers, mortgagees, and other third parties. 35 ILCS 200/9-275(g)-(k) (West 2014). The concluding paragraph, (l), sets out the terms of an amnesty period. 35 ILCS 200/9-275(l) (West 2014).

- 4 -

¶ 12    In this instance, the General Assembly clearly directed the Cook County assessor to proceed as far back as three years against taxpayers who received an erroneous homestead exemption. Specifically, paragraph (c) of section 9-275 provides that the Assessor may cause a lien to be recorded against property when the property owner received one or two erroneous homestead exemptions "during any of the 3 collection years immediately prior to the current collection year." 35 ILCS 200/9-275(c) (West 2014). Paragraph (f) specifies that if the taxpayer received one or two erroneous exemptions, "during any of the 3 collection years immediately prior to the current collection year," the principal amount of unpaid taxes and 10% interest per annum are to be charged to that taxpayer. 35 ILCS 200/9-275(f) (West 2014). In this case of statutory interpretation, we adhere to the principle that if the General Assembly had intended for the statute to apply only to erroneous homestead exemptions "which occur after the effective date of the legislation," or after a certain date, then the General Assembly would have included this type of limiting language in its legislation. *Hayashi v. Illinois Department of Financial & Professional Regulation*, 2014 IL 116023, ¶ 18, 25 N.E.3d 570. Mulry's argument, if accepted, would make the Code applicable only to homestead exemptions erroneously taken in 2017 or later, to a date at least "3 collection years" after the enactment in 2013. It is illogical and inconsistent with the statute's wording to believe that the legislature intended to delay the recoupment of unwarranted exemptions, and it is not the role of the judiciary to read into a plainly worded statute an unstated exception, limitation, or condition. *Mohammad v. Department of Financial & Professional Regulation*, 2013 IL App (1st) 122151, ¶ 10, 883 N.E.2d 90. Within both paragraphs (c) and (f), the General Assembly clearly and unequivocally expressed its intention that section 9-275 apply to exemptions erroneously taken in "any of the 3 collection years immediately prior to the current collection year." 35 ILCS 200/9-275(c), (d) (West 2014). Moreover, if Mulry were correct, there would be no reason for the legislation's amnesty period. In paragraph (l), the General Assembly directed the Cook County assessor's office to "establish an amnesty period for all taxpayers owing any tax due to an erroneous homestead exemption granted in a tax year prior to the 2013 tax year." 35 ILCS 200/9-275(l) (West 2014). Further, "[t]he amnesty period shall begin on the effective date of this amendatory Act of the 98th General Assembly and shall run through December 31, 2013." 35 ILCS 200/9-275(l) (West 2014). Accordingly, [i]f, during the amnesty period, the taxpayer pays the entire arrearage of taxes due for tax years prior to 2013, the county clerk shall abate and not seek to collect any interest or penalties that may be applicable and shall not seek civil or criminal prosecution for any taxpayer for tax years prior to 2013." 35 ILCS 200/9-275(l) (West 2014). Mulry's reading of the statute would negate the entire amnesty paragraph. By its plain language, the legislation enacted in 2013 swept into its scope Mulry's erroneous homestead exemptions for the tax years 2010, 2011, and 2012.

¶ 13    Nevertheless, we do not find that the statute operates retrospectively, as Mulry argues. As pointed out in *Commonwealth Edison*: " ' A statute does not operate "retrospectively" merely because it is applied in a case arising from conduct antedating the statute's enactment [citation] or upsets expectations based in prior law. Rather, the court must ask whether the new provision attaches new legal consequences to events completed before its enactment.' " *Commonwealth Edison*, 196 Ill. 2d at 39, 749 N.E.2d at 971-72 (quoting *Landgraf*, 511 U.S. at 269-70). A law that operates retroactively is a law that reaches back in time and either penalizes conduct that was permissible at the time or changes a penalty. *Mohammad*, 2013 IL App (1st) 122151, ¶ 14, 883 N.E.2d 90; *Hayashi*, 2014 IL 116023, ¶ 23, 25 N.E.3d 570 (a law that operates

- 5 -

retroactively is a law that would " 'impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed' " (quoting *Landgraf*, 511 U.S. at 280)).

¶ 14 Section 9-275's application to Mulry is not retrospective. It does not upset Mulry's expectations based on prior law or attach new consequences to prior conduct because, even under prior law, she was not entitled to take simultaneous homestead exemptions on two different properties. An Illinois "homestead" is "residential property occupied by the owner or owners thereof as his or her principal dwelling place" (see 35 ILCS 200/15-175(f) (West 2014) (" 'Homestead property' under this Section includes residential property that is occupied by its owner or owners as his or their principal dwelling place, or that is a leasehold interest on which a single family residence is situated, which is occupied as a residence by a person who has an ownership interest therein, legal or equitable or as a lessee, and on which the person is liable for the payment of property taxes.")). Thus, a homestead exemption from taxation must be limited to the person's principal dwelling place. *Proviso Township High School District No. 209 v. Hynes*, 84 Ill. 2d 229, 235, 417 N.E.2d 1290, 1293 (1980). This established definition was in effect well before Mulry took the erroneous homestead exemptions for tax years 2010, 2011, and 2012. In fact, the estate of homestead in real property has existed by statute in Illinois since 1851. *Proviso Township High School*, 84 Ill. 2d at 236, 417 N.E.2d at 1293. Accordingly, even prior to section 9-275's enactment in 2013, Mulry has never been entitled to benefit from two simultaneous homestead exemptions. Mulry does not dispute that she took simultaneous exemptions for at least three years. She only disputes whether the Cook County assessor's office could proceed under section 9-275 in order to recoup the exemptions she was never entitled to take. "A statute does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment, [citation], or upsets expectations based in prior law." *Landgraf*, 511 U.S. at 269. Moreover, a statute that "creates new requirements to be imposed in the present or future, and not in the past, does not have a retroactive impact on the parties." *Hayashi*, 2014 IL 116023, ¶ 26, 25 N.E.3d 570. The Cook County assessor's "Notice of Erroneous Homestead Exemptions" for tax years 2010, 2011, and 2012 affected only Mulry's present and future eligibility to continue to retain erroneous exemptions from her property tax bill. The Code's impact on her has been solely prospective and not impermissibly retroactive within the meaning of the test articulated in *Landgraf*.

¶ 15 Mulry contends only in passing, in the "Summary of Argument" section of her opening appellate brief, that our interpretation of the statute would "conflict with section 4 of the Statute on Statutes (5 ILCS [70/4 (West 2000)]." We disagree. Section 4 of the Statute on Statutes "controls by default only where the legislature has not clearly defined the temporal reach of a statute." *Hayashi*, 2014 IL 116023, ¶ 24, 25 N.E.3d 570 (citing *Caveney v. Bower*, 207 Ill. 2d 82, 92-93, 797 N.E.2d 596, 601-02 (2003)); *Doe A. v. Diocese of Dallas*, 234 Ill. 2d 393, 406, 917 N.E.2d 475, 483 (2009) (section 4 of the Statute on Statutes (5 ILCS 70/4 (West 2006)) operates as a default standard only where the legislature has not clearly specified the temporal reach of a statute). If the legislature has clearly expressed the temporal reach of legislation, section 4 is irrelevant. *Hayashi*, 2014 IL 116023, ¶ 24, 25 N.E.3d 570; *Doe A.*, 234 Ill. 2d at 406, 917 N.E.2d at 483 (section 4 "is inapplicable to situations where the legislature has clearly indicated the temporal reach of a statutory amendment"). Section 4 is not applicable in this instance where the legislature has clearly defined the temporal reach of its statute.

¶ 16        Even if we assume for the sake of argument that the statute is retroactive, Mulry's arguments do not persuade us to reverse the hearing officer's decision. Under *Landgraf*, clear legislative intent of retroactivity is to be given effect, unless there is a constitutional prohibition. *Commonwealth Edison*, 196 Ill. 2d at 38, 749 N.E.2d at 971. Mulry argues that section 9-275 violates the contract clause of the Illinois Constitution, and she supports this argument with the following quotation from *First of America Bank*: "Our courts have defined a retroactive law as ' " one that takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability in respect of transactions or considerations already past." ' [Citation.] Thus, retroactivity is defined in terms of the effect a law would have on vested contractual rights, not in terms of the time when a party happens to assert those rights." *First of America Bank, Rockford, N.A. v. Netsch*, 166 Ill. 2d 165, 183, 651 N.E.2d 1105, 1113 (1995). Mulry contends "the imposition of a lien impacts [her] vested rights." This argument is unclear to the court but, regardless, no lien was ever sought or imposed on her property, and Mulry never had a right to take duplicative homestead exemptions and cannot claim that a vested right has been impinged.

¶ 17        Mulry also contends that holding her liable in 2014 for back taxes dating to 2010 is so harsh and oppressive that it violates the due process clauses of the Illinois and federal constitutions. In order to determine whether retroactive application is "so harsh and oppressive as to transgress the constitutional limitation," courts consider such factors as (1) the legislative purpose for enacting the law, (2) the length of period of the retroactivity, (3) whether the taxpayer reasonably and detrimentally relied on the prior law, and (4) whether the taxpayer had adequate notice of the change in the law. *Commonwealth Edison*, 196 Ill. 2d at 43, 749 N.E.2d at 974. Mulry argues only the second factor and contends the length of retroactivity is too long. We do not consider the three year period to be harsh and oppressive, given that it is shorter than the time period found in comparable provisions of the Property Tax Code, such as the 20-year statute of limitations the state has to collect delinquent real estate taxes and the 20 years a Cook County taxpayer has to request a refund of their overpayment of property taxes. See 35 ILCS 200/20-190(a) (West 2014) ("actions for the collection of any delinquent general tax, or the enforcement or foreclosure of the tax lien shall be commenced within 20 years after the tax became delinquent, and not thereafter"); 35 ILCS 200/20-175(a-1) (West 2014) ("A claim for refund shall not be allowed unless a petition is filed within 20 years from the date the right to a refund arose."). In those two examples, either the tax collector or the taxpayer is given 20 years to correct the state's tax receipts. The General Assembly's decision to allow the assessor to go back three years to rectify erroneous exemptions from property taxation is consistent with these other corrective measures. The three-year period at issue is not so long that it is harsh and oppressive. Therefore, even if the statute were retrospective, which it is not, it would not implicate Mulry's contractual or substantive due process under the state and federal constitutions.

¶ 18        We next address Mulry's contention that there was insufficient foundation to warrant the admission of the assessor's computer records into evidence. Mulry contends that without the computer records, there is no competent evidence that she received a homestead exemption on the subject property for tax years 2010, 2011, and 2012, nor was there competent proof that she violated the cited statute. Consequently, she concludes, the agency's decision was arbitrary and capricious and must be set aside. See *Greer v. Illinois Housing Development Authority*, 122 Ill. 2d 462, 496, 524 N.E.2d 561, 576 (1988).

¶ 19    When a review of the legal effect of a given set of facts involves a mixed question of law and fact, our standard of review is one of clear error. *White*, 2014 IL App (1st) 132315, ¶ 23, 18 N.E.3d 92. " 'Clearly erroneous' is said to rest somewhere between the 'manifest weight of the evidence' and *de novo*, requiring us to afford some deference to the agency's experience and expertise. [Citations.] Under the clearly erroneous standard, we must accept the administrative agency's findings unless we are firmly convinced that the agency made a mistake.' " *Express Valet, Inc. v. City of Chicago*, 373 Ill. App. 3d 838, 847, 869 N.E.2d 964, 973 (2007) (quoting *Randolph Street Gallery v. Zehnder*, 315 Ill. App. 3d 1060, 1064, 735 N.E.2d 100, 104 (2000)).

¶ 20    In support of her argument that the printouts from the assessor's database are inadmissible, Mulry cites cases that are over 25 years old that question the trustworthiness of computers. Mulry relies on *King*, which addressed the evidentiary rules that Mississippi used in the late 1960s. *King v. State ex rel. Murdock Acceptance Corp.*, 222 So. 2d 393 (Miss. 1969). The Supreme Court of Mississippi contrasted "conventional bookkeeping methods" and the "shop book rule" with "business records stored on electronic computing equipment." *King*, 222 So. 2d at 397. Nevertheless, even in 1969, the Mississippi court determined local evidentiary rules should evolve with "the realities of current business methods" and that the court would "adapt the rule formerly applied to conventional books so as to accommodate the changes involved in electronic data processing." *King*, 222 So. 2d at 398. The Mississippi court went on to state that jurisdiction's standard for determining the admissibility of computer printouts. *King*, 222 So. 2d at 398. The southern court's standard was subsequently discussed by the Illinois Supreme Court in *Grand Liquor Co.*, a 1977 decision that introduced the concept of the "computer printout" and characterized a government auditor's "personal computations" and "nonautomated recordkeeping" as the "conventional" method in use at the time. *Grand Liquor Co. v. Department of Revenue*, 67 Ill. 2d 195, 198-99, 367 N.E.2d 1238, 1240 (1977). The Illinois court applied the same evidentiary standard as the Mississippi court and ultimately found that an insufficient foundation for computer printouts was laid in the 1972 administrative hearing it was reviewing. *Grand Liquor Co.*, 67 Ill. 2d at 202, 367 N.E.2d at 1242.

¶ 21    These cases simply determined that a long-standing exception to the hearsay rule, which has been made for regular entries made in the course of business, could be applied to what was then a new form of record keeping. Given the courts' need to explain how computerized accounting records were created and maintained at the time, we do not consider the analysis persuasive and applicable to proceedings that took place when computer record keeping and printouts were ubiquitous and routine. The rule of evidence that was in effect when this case developed did not express a preference for any particular form of record keeping. The foundation necessary to admit a record into evidence is only that the proponent establish that the record was (1) made in the regular course of business and (2) made at or near the time of the transaction, event, or occurrence. *Bayview Loan Servicing, LLC v. Szpara*, 2015 IL App (2d) 140331, ¶ 42 n.5, 46 N.E.3d 950 (indicating there is a hearsay exception for " 'Records of Regularly Conducted Activity' "). See also *Eastman v. Department of Public Aid*, 178 Ill. App. 3d 993, 998, 534 N.E.2d 458, 461-62 (1989) (acknowledging the admissibility of computer-generated records).

¶ 22    Here, Accardi's testimony clearly satisfied the two foundational requirements. Accardi said he investigated Mulry's tax exemptions for 2010, 2011, and 2012, in part by "pull[ing]

documents" from the "records that *** [were] kept in the normal course of business at the Assessor's office." Accardi elaborated, stating that he was "familiar with the [Mulry] case" and that he printed out the proferred documents himself from the assessor's AS400 system. Accardi also more specifically identified the printouts and their contents:

"Q. And, how do you obtain these records?

A. Just accessing our computer system. We have to log in individually and just based on the PIN numbers, it produces the information.

Q. So, when you log into your system, you would type in the PINs that are currently in front of you, that are People's Exhibits D1 and D2, what does it show for the homeowner's exemptions?

* * *

*** [L]et me ask that question again ***. Can you tell us what the documents in front of you show you as far as homeowner's exemptions for the tax years 2010, '11, and '12?

A. They show that, that the homeowner's homestead exemption was taken for those years.

Q. On both properties?

A. That's correct."

¶ 23 Thus, the testimony established that the printout was from records that were made in the regular course of the assessor's business, at or near the time that Mulry's tax liability was calculated in 2010, 2011, and 2012.

¶ 24 Furthermore, our review of the hearing transcript and exhibits leads us to conclude that the hearing officer did receive sufficient competent evidence establishing that Mulry was liable for erroneous homestead exemptions because she had been simultaneously receiving a homestead exemption for the 2010, 2011, and 2012 tax years for two properties located in Cook County. Mulry testified that she has been the owner and resident of one of the properties, 9135 South Springfield Avenue, for at least 30 years and that in 2001 she inherited her uncle's property, 9139 South Springfield Avenue, and still owns it. Mulry further testified that tenants have occupied the inherited property more or less continuously since she acquired it. She was specifically asked whether there were tenants during the three tax years at issue, and her answer established that the inherited property had not been her primary residence. Accardi testified regarding the records kept by the assessor's office and further testified that Mulry received a homestead exemption on both of the properties dating back to at least 2010. In addition to the witness testimony, the exhibits tendered to the hearing officer included printouts from the assessor's database showing application of a homestead exemption to both properties. The exhibit marked as "People's Exhibit D1" was a printout indicating Mulry was the taxpayer for PIN 24-02-302-022-000, which is the PIN associated with the uncle's former property, 9135 South Springfield Avenue and that "HO" was applied for tax years 2009, 2010, 2011, and 2012, but not tax year 2013. The exhibit marked "People's Exhibit D2" was a printout indicating Mulry and her husband were the taxpayers for 24-02-302-023-0000, which is the PIN associated with their residence, 9139 South Springfield Avenue, and that "HO" was applied for tax years 2009, 2010, 2011, and 2012, but not tax year 2013. The exhibits marked as "People's Exhibit A1," and "People's Exhibit A2" were pages of the assessor's "Notice of Intent to Record a Lien" on the inherited property due to tax liability totaling $4188.60 for

principal and interest for the three tax years. The pages marked as "People's Exhibit A3," "People's Exhibit A4," and "People's Exhibit A5" were the three "Notices of Erroneous Homestead Exemptions" on the inherited property for the three tax years. These notices specified the amounts improperly deducted each year. "People's Exhibit C1" was a "Notice of Probate and Release of Estate's Interest in Real Estate" that was notarized on September 15, 2002, and filed with Cook County recorder on September 25, 2002, indicating that title to the uncle's property, which was identified both by its PIN and common street address, had been released to Mulry. Mulry's "Exhibit 4" was a "Final Report of Independent Representative" filed in the uncle's probate case on September 25, 2002, which confirmed that the administration of the estate had been completed, including the release of the estate's interest in real estate.

¶ 25 On the basis of the witness testimony and documentary evidence, the hearing officer found at the conclusion of the hearing that Mulry erroneously received a homestead exemption on the inherited property, making her liable for repayment in the amount of $4188.60. The evidence was competent and its manifest weight supports the hearing officer's findings and order of liability.

¶ 26 Mulry remarks that the statute supports only the enforcement of a lien and not the finding of monetary liability. Mulry's remark is not sufficiently developed to warrant review. *Kaminski v. Illinois Liquor Control Comm'n*, 20 Ill. App. 3d 416, 421, 314 N.E.2d 290, 294 (1974) (finding appellants failed to pursue issue on appeal).

¶ 27 For these reasons, we affirm the final administrative decision indicating that Mulry is liable for the homestead exemptions erroneously granted for tax years 2010, 2011, and 2012 for the 9135 South Springfield Avenue property.

¶ 28 Affirmed.